MARY SANDBERG v. ST. PAUL & DULUTH RAILROAD COMPANY.[1]

July 14, 1900.

Nos. 12,085—(206).

### Railway—Pedestrian at Crossing—Contributory Negligence.

*Held,* in crossing a steam railroad on a public crossing at a place where there were only double tracks, and the vision was unobstructed, the plaintiff was guilty of contributory negligence in looking but once, and that before reaching the tracks.

Action in the district court for Ramsey county by plaintiff, as administratrix of the estate of Gustaf Sandberg, deceased, to re-

[1] Reported in 83 N. W. 411.

cover $5,000 damages on account of the death of decedent. The case was tried before Jaggard, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Hadley & Armstrong*, for appellant.

*T. D. Sheehan* and *D. J. Keefe*, for respondent.

LEWIS, J.

Defendant company owns and operates a line of railway running from the Union Depot in St. Paul in a northerly direction through a ravine, through which flows Phalen's creek. At a point about two miles from the center of St. Paul, between Fauquier and Ross streets, the tracks run under the Omaha railroad at right angles. From the Omaha bridge defendant's tracks curve to the east, and cross Greenbrier avenue at a point about eight hundred feet from the bridge. At the bridge the valley of the ravine is contracted to less than one hundred feet, widening out rapidly to the east, and again contracting to about one hundred feet in width at a point about three hundred feet north of the bridge, and the valley remains about the same for two hundred feet further north. Defendant's road consists of two tracks located about ten feet apart, the one to the east being used for north-bound and the other for south-bound trains. On the east side of these tracks was a footpath (possibly two) used by people in passing north and south along the tracks through this ravine. The principal path continued on south under the Omaha bridge and to the north as far and further than the Greenbrier avenue crossing. People were accustomed to cross back and forth from this path over the defendant's tracks to a point fifty or sixty feet north of the Omaha bridge, and westerly, up into Payne avenue.

On November 19, 1897, at about one o'clock p. m., Gustaf Sandberg was walking in a southerly direction along the path on the east side of defendant's tracks. At a point about one hundred twenty-five feet north of the Omaha bridge he started southwesterly across the tracks in a diagonal direction, and, after walking about fifty or sixty feet, was struck by a south-bound freight train

on the westerly track, and was so injured that he died from the effects thereof on the evening of the same day. Plaintiff recovered a verdict of $3,550, and defendant appeals from an order denying a new trial.

Three questions are presented on this appeal: (1) Was the place where the deceased crossed the tracks a highway or recognized crossing? (2) Was the defendant guilty of negligence? And (3) was the deceased guilty of contributory negligence?

As to the speed of the train there is much doubt, and the usual signals at crossings were not given. The man was not seen by any of the train men, although he might have been for a distance of five hundred feet before he was struck. Conceding that the place was a regular crossing, there was evidence to go to the jury upon the question of defendant's negligence.

As to the crossing it is claimed by respondent that, although there was no regularly laid out street at that point, and although the defendant had never recognized it as a crossing, except by acquiescence in its use, such use had continued for so long a time, and had been of such persistent character, that defendant had by implication become bound to recognize it as a crossing, and to deal with the public by the performance of the usual duties required at such places. The evidence in this respect is somewhat indefinite, and, the subject being most important to all railway companies and to the public, we have concluded not to enter at this time upon a discussion of the principles involved, inasmuch as a new trial must be granted upon another ground.

Conceding, then, that the point where deceased was killed was a public crossing, and that he was not a trespasser, we will pass to a consideration of the third proposition,—contributory negligence. There was some testimony to the effect that at the time of the accident there was a path within five or six feet of the east tracks, and another one thirty-four feet east running parallel therewith. The latter was the principal one, but there is doubt as to which path deceased was on when seen by the witnesses. We will place him in the most favorable position for plaintiff,—in the path near the track. According to the witness Chell, who had the best opportunity to see him, deceased stopped in the path at a point about

one hundred twenty-five feet north of the bridge, looked up and down the track, and then started across the tracks in a diagonal direction southwesterly. Chell also testified that while in the act of crossing the track an engine on the Omaha bridge was making a noise by letting off steam, and that at the time deceased stopped and looked up the track north the train was at Greenbrier avenue. This is corroborated by two other witnesses. The further testimony was that the man was walking along in the diagonal direction, and had walked some fifty or sixty feet, when the train struck him. Chell, who was standing in a yard upon the west bank of the ravine, at once went down, and found the man lying between the two tracks.

If plaintiff's witnesses are correct, and deceased was at a point five feet from the east track when he stopped, and at that time the train was at Greenbrier avenue, and the man was struck after he had walked fifty feet, then he walked fifty feet while the train was going seven hundred feet. He was struck before he had got much beyond the east rail of the west track, because he was thrown to the left. Hence, if he started from a point within five feet of the east track, and only walked fifty or sixty feet, he was not walking in a diagonal direction, but was walking along the tracks, either between or upon them, when struck. The distance between the rails is less than five feet, and between the tracks about ten feet; so, if he had gone across the tracks in a diagonal direction, about thirty-five feet would have carried him across both tracks. Again, the witnesses state that he did not look around north after the time mentioned, but kept right on until hit. He had a clear view up the track for a distance of at least five hundred feet from the east track, but he did not stop or look again. If he had, he would have seen the train, for it was there in plain sight; nothing to obstruct his vision, and no other trains upon either track to confuse him. If he started from the other path, so much the worse, for the necessity to look again would be so much the stronger. He lived in the neighborhood, was familiar with the trains and their speed. Why did he keep on, and allow himself to be run down? Was he absorbed in his own thoughts, oblivious to the surroundings, or was he walking along between the tracks, and, discovering

the train, attempted to pass in front of it, and was caught? The noise of the train overhead does not explain it, for he was walking in that direction, and a glance was sufficient to locate it.

The rule has been established in this court over and over again that one who attempts to cross a railroad track under such circumstances must use his own senses continuously. Ordinary prudence requires this. No less stringent rule would be practicable. Another principle is as well established,—that a person crossing as the plaintiff was cannot rely upon the signals to remind him of danger. He is bound to be awake and alive for his own protection. There may be cases where, on account of numerous tracks, frequently passing trains or obstructions, a person would be required to look but once. There may be cases where the noise and confusion of approaching or passing trains would tend to confuse, and under those circumstances reasonable allowance must be made. But, according to the facts presented in this record, we can find no extenuating circumstances.

Order reversed, and a new trial granted.