[No. 5666.]

## THE ADAMS EXPRESS COMPANY v. TEN WINKEL.

**1.  Express Companies—Contracts—Evidence—Sufficiency.**

Evidence reviewed, and held insufficient to show that an express company received an instrument under a special contract to deliver it to the purchaser and to collect the purchase price and return it to the sender, or to return the instrument if the purchaser failed to pay, so as to make the company liable for delivering the instrument without receiving the purchase price.— Pp. 64-66.

**2.  Evidence—Witness Testifying at Different Trials—Weight.**

Any discrepancy in the testimony of a witness testifying on different trials of a cause should be resolved in favor of the earlier testimony, since the transaction was then fresher in his mind.—P. 67.

**3.  Express Companies—Agreement to Deliver Packages—Rights of Agent.**

The agent of an express company who instructs a sender of a package to address the package as he wants it addressed, and who shows him where he can find envelopes for C. O. D. packages, has the right to presume that the sender will exercise care and judgment sufficient to properly mark the envelope selected.— P. 67.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Samuel L. Carpenter, Judge.*

Action by Herman Ten Winkel against The Adams Express Company. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

Messrs. FRANKLIN & TEDROW, for appellant.

Mr. C. C. BROWN and Mr. WM. YOUNG, for appellee.

This cause was tried three times in the court below, the first two trials resulting in a disagreed jury. In the third trial, from which the present appeal was taken, a verdict and judgment were ren-

dered in favor of appellee, who was plaintiff below, for the full amount claimed with interest, viz: $1,213.33.

Plaintiff Ten Winkel sold to one Came of Guelph, Ontario, the exclusive right for Canada to certain patents, at the price of $1,200.00, receiving $160.00 in cash; the balance of $1,040.00 was to be paid at Guelph, upon examination and approval of the conveyances.

Ten Winkel and Came were both in Denver at the time of this transaction, and, on the 11th of August, 1902, M. J. Stair, as agent and attorney for the former, together with Came proceeded to the office of The Adams Express Company, appellant and defendant below, for the purpose of transmitting the conveyances under the arrangement made. Prior to starting for the office, Stair had prepared the following letter:

"Denver, Colo., Aug. 11, 1902.

"To The Adams Express Company:

"You are hereby authorized to send the within deeds to Mr. V. M. Came, Guelph, Ontario, at cost of said V. M. Came, and permit said V. M. Came to examine said deeds.

"And said deeds are to be returned to Denver, Colorado, and delivered to M. J. Stair, or pay the said M. J. Stair, or his assigns, the sum of $1,040.00, on or before August 1st, 1902.

"Witness our hands and seals this 11th day of August, 1902.          "V. M. CAME. (Seal)
                               "M. J. STAIR, Atty. (Seal)"

Upon arriving at the express office, a conference was had with the agent authorized to receive such packages, one F. M. Reed. The papers were shown to Reed, and according to the testimony of Mr. Stair,

the foregoing letter of instructions was handed to and read by him. Reed denies seeing this letter or reading or knowing anything about it. And his testimony is corroborated by the testimony of Came, who says that he was standing at the side of Mr. Stair before the window; and that he did not see the letter given or exhibited to Reed, although he was close enough to have seen had this been done. According to the testimony of both Reed and Came, Reed refused to read or examine the conveyances handed to him, saying that he had no right to do so.

Thereupon Reed directed Stair to go to a counter or table in the room containing express company envelopes of different kinds, and direct one as he wished the package sent, and return the same to him (Reed). Stair and Came then stepped over to the table or desk and proceeded to comply with Reed's instructions. Some five minutes were thus consumed. Although the desk or rack contained envelopes suitably printed for sending C. O. D. packages, Stair selected one adapted to ordinary packages handled by the company for transportation only. Upon this envelope he simply wrote the name and address of Came without any memorandum or statement showing that a C. O. D. package was to be enclosed; that is, the package to be delivered only upon payment of the balance of the purchase money, viz: $1,040.00.

Stair and Came then returned to the window, and Reed, without examining, placed the conveyances in the envelope, sealing the same in the customary manner. He inquired the value of the package, and Stair remarked that it had but little value, that it might be replaced for $5.00. Reed responded that it made no difference in the charges whether it was $5.00 or $50.00, and he then wrote out a receipt in the usual form with the usual conditions printed

thereon, but containing no reference to the collection feature of the transaction; after indorsing thereon a valuation of $50.00, he handed the receipt to Stair, who received the same without objection, and with Came immediately left the office.

The package went to Guelph where it was delivered to Came, who had also gone there, upon payment of the express charge of 25 cents, alone; neither the $1,040.00 nor any portion thereof being collected.

About ten days afterwards, Stair visited the express office and inquired of Reed whether he had heard anything from the package, and was told that he had not. A few days later he again called and made inquiry, receiving the same information; he then informed Reed that he understood the package had been delivered without collection of the money. The company at once took up the matter and investigated it, finding that the package had been thus delivered.

Stair testifies that when he made inquiry the second time, informing Reed that he understood the package had been so delivered, Reed responded that it was impossible, that Came could not have gotten the package without putting up the money. This testimony in so far as Reed's response about non-delivery without putting up the money is concerned, is denied by Reed. Stair inquired about the letter of instructions. Reed stated that he did not have it and knew nothing of it. Thereupon Stair produced a copy of this letter together with the original receipt, and the investigation by the express company immediately followed.

The express company disclaiming liability, the present action was brought with the result above stated.

One ground alleged in the motion for a re-trial was newly discovered evidence. Affidavits in sup-

port of this ground stated that V. M. Came, upon returning to Denver some time after the delivery of the deeds to him, informed C. J. Morley, an attorney-at-law who was acting for him personally, that he had played a smart trick. That he had gotten the deeds, without payment of the balance of the purchase money; that when he and Stair went to the express office to send the package C. O. D., Stair, who carried the papers, inadvertently handed to him the letter of instructions, and that he put the same in his pocket and kept it there; that the agent of the express company never saw the letter and knew nothing about it; and that he had thus been enabled to get the deeds without making the specified payment. Morley refused to make an affidavit, but expressed a willingness to testify to the facts stated. The court below overruled the motion for a new trial, and entered judgment on the verdict.

Mr. JUSTICE HELM delivered the opinion of the court:

From the standpoint of plaintiff below the transaction considered in this action involves two contracts, viz.: the common-law contract or liability for safe transportation and delivery of the package; also a special agency contract whereby the express company agreed to collect and return to Stair $1,040.00, or to return the package itself if the money were not paid. The liability sued on is claimed to arise by virtue of a violation of the latter contract.

A proper regard for the distinction between the two contracts specified, or causes of action growing out of the same, will reconcile nearly all of the authorities cited, and do away with many of the differences between counsel. The arguments for appellant in this court are based almost entirely upon principles and authorities applicable to the common-

law liability of the express company as a carrier. The arguments of appellee's counsel on the other hand and the authorities cited by them rest exclusively upon the rules controlling the company's liability as a collection agent under its alleged contract in that behalf.

This discrepancy in the arguments arises undoubtedly from the different views of counsel touching the status of the letter of instructions addressed to the defendant company in connection with the package. Plaintiff's counsel assume that this letter was delivered to defendant's receiving agent, Reed; and that a special contract was entered into whereby defendant agreed either to return the deeds sent, or to collect and pay over the $1,040.00 specified in the letter. Defendant's counsel on the other hand assume that the letter of instructions was never given to or received by defendant's agent; they assert that no special collection contract was ever made; and hence the only cause of action that could become the foundation for this proceeding must arise from and rest solely upon defendant's liability as a common carrier.

It would at first seem, therefore, as if a satisfactory decision of this appeal necessarily requires a determination of the question whether or not the letter of instructions was delivered to or read by defendant's agent.

On this specific point a careful consideration of the record leaves but little doubt in our minds. Stair's testimony that he delivered the letter to Reed and that Reed read the same stands alone. It is not supported by any other testimony or by any circumstances before us. Reed's declarations that he never saw or heard of the letter are corroborated by the testimony of the witness Came. Came was one of the parties directly interested, and was present in

the express office throughout the transaction there; he was with Stair all of the time, and was in a position where he would undoubtedly have seen the letter delivered and read had such delivery and reading taken place.

Reed's testimony finds additional confirmation from the affidavits filed in support of the motion for a new trial. It thus appears that before the action was brought Came stated to his attorney that this letter was handed to him in the express office by Stair through mistake; that he put it in his pocket and kept it there, and thus prevented defendant or its agent from seeing or reading it. Judging by this record Came is not entitled to much credence; but other matters appearing in these affidavits tend somewhat to support the truthfulness of his declarations as stated therein. And while certain collateral circumstances forbid our holding that the court abused his discretion in denying the motion for a new trial upon the ground of this newly discovered evidence, yet it is entitled to notice in this connection.

The fact that Reed did not understand that he was making a contract for the collection of the unpaid balance of the purchase price is further evidenced by the following circumstance: when he made out the receipt for the package he omitted to indicate therein in any manner, by words or by figures, that the package was a C. O. D. package. This receipt, which some of the cases hold constitutes the entire contract for carriage, was limited by its terms to the subject of carriage alone. And when Stair, who was a lawyer, and who was giving special attention to the collection feature of the transaction, accepted and retained the receipt in this form without objection or protest, he cannot be entirely exonerated from fault. We are not prepared to hold that, under the circumstances, he was free from negligence in not

insisting that the collection contract or obligation be indorsed upon or represented in the receipt.

And finally Reed's understanding that he was receiving the package for transportation only is indicated by indorsements upon the envelope in which it was sent. When Stair addressed this envelope and brought it to Reed to receive the enclosures, it is surprising that Reed would not have noticed the absence of the C. O. D. provision if he had knowledge that the package was to be controlled by such a provision. He would hardly have failed to call Stair's attention to the omission and send him back to the desk or table to address and properly indorse one of the regular C. O. D. envelopes kept there for just such packages. Stair's oversight in selecting the wrong kind of an envelope, and in failing to make proper indorsement on the envelope selected, would hardly have escaped his notice. The sample envelopes in evidence with the printed indorsements upon them show just how this class of packages are sent, and the difference between the C. O. D. envelopes and other envelopes is so plain that it would be inexcusable for a layman, much less for a lawyer, to be mistaken in choosing.

The foregoing facts and circumstances, coupled with other matters appearing in the record, leave very little doubt in our minds touching the disposition of the letter of instructions. That Stair was entirely ingenuous in his testimony, and honestly believed the statements made by him to be true, we do not doubt. But, as we have seen, besides the contradicting testimony, a number of things indicate that he was mistaken. The conclusion is almost irresistible that Came obtained possession of this letter and surreptitiously secreted the same, thus intentionally defeating the very purpose of the visit to the express office.

The jurors did not have before them the evidence of Came's treacherous conduct, disclosed by the affidavits filed in support of the motion for a new trial; with such proofs they might well have reached a different conclusion. But there is another consideration which hardly seems to have been given weight according to its importance.

Stair testified in each of the three trials of the cause. In the first two trials he stated that Reed told him to address the envelope just as he wanted it, or according to the letter of instructions. And, while at the third trial his testimony differed somewhat in this regard, he admitted that such might have been the direction of Reed in the premises. Any discrepancy in this respect should be resolved in favor of the earlier testimony; because then the transaction was fresher in his mind and less apt to be affected by a lapse of memory.

Stair accepted Reed's suggestion and obeyed his instruction. He and Came at once proceeded to address and label the envelope. And having done so, they delivered it to Reed, receiving the receipt devoid of the agency contract or feature. Stair and Came were intelligent men; the former was a lawyer of long experience and of extensive practice. He was present throughout the entire transaction and conducted the same. Reed was busy receiving and attending to packages for other people. Having instructed Stair to address the package just as he wanted it, and having shown him where he would find the envelopes for C. O. D. packages, Reed may have discharged the matter from his mind. He had a right to presume that Stair would exercise care and judgment sufficient to properly indorse or mark the envelope selected.

Assuming that Reed had seen and read the letter of instructions, he might have concluded when the

envelope was delivered to him containing no reference thereto, that Stair and Came.had abandoned this part of their programme. As a matter of fact they remained at the desk or rack containing the envelopes some five minutes or more considering the indorsement and indorsing the envelope selected. They were the parties actually interested; Stair representing Ten Winkel, and Came representing himself; and they alone signed the letter of instructions. They had ample time to rediscuss the subject, and to change their plans. We are not prepared to say that, if Reed knew of the original intention of the parties, he was entirely blameless; but certainly he was not the one mainly at fault.

It is extremely doubtful if Reed ever saw the letter of instructions. But if he did, under all the circumstances presented by the record before us, we are satisfied that Stair and Came were guilty of greater negligence in the premises than was Reed. And it follows that appellant should not, on this record, be held responsible for the loss, if any loss be ultimately suffered.

The judgment will be reversed and remanded for further proceedings.    *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.