## WILLIAM SUMMER v. CHICAGO & NORTHWESTERN RAILWAY COMPANY and Another.[1]

June 6, 1913.

Nos. 17,874—(47).

**Death at highway crossing — contributory negligence.**

Plaintiff's intestate was killed at a crossing of an industry track of defendant and a city street. In this action to recover damages for his death, it is *held:*

(1) The evidence sustains the verdict that defendant was guilty of negligence causing the accident.

(2) It did not conclusively appear that deceased was guilty of contributory negligence, and the verdict to the effect that he was not is sustained by the evidence.

[1] Reported in 141 N. W. 854.

Action in the district court for Waseca county to recover $7,500 for the death of plaintiff's intestate. The complaint, among other matters, alleged that the bell on the engine was not rung and the whistle was not sounded as the train approached the crossing where decedent was killed, nor was any warning given of its approach to the crossing; that no person was upon the front end of the engine to warn pedestrians of its approach, and the failure to give such warning and to have any person to warn persons was negligence which contributed to the death of decedent; that had defendant company performed its duty imposed by law and exercised ordinary care in the operation of its train, or had defendant Dourigan performed his duty in giving warning of the approach of the engine, the accident would not have happened, and the death of the intestate was due to the negligence of the defendants. The complaint also set up an ordinance of the city of Waseca, granting defendant the right to construct the track upon which the intestate was killed upon conditions that it would maintain a suitable crossing over its side track and that at all times when engines or cars were being moved upon that side track it would keep and maintain a flagman at the crossing who would properly guard travel thereon; that defendant accepted the ordinance, but negligently failed to construct a suitable crossing and failed to keep a flagman at the crossing to protect travel thereon. The answer alleged that the injury and death of plaintiff's intestate were caused solely by his own negligence, and denied the foregoing allegations of the complaint. The case was tried before Childress, J., who denied defendant's motion for an instructed verdict and a jury which returned a verdict for $2,500 in favor of plaintiff.

From an order denying defendant company's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Brown, Abbott & Somsen,* for appellant.

*John Spillane, P. McGovern, E. B. Collester* and *Moonan & Moonan,* for respondent.

BUNN, J.

This action was brought by plaintiff as administrator of the estate

of Gustaf Summer to recover damages for his death, alleged to have been caused by the negligence of defendants. There was a verdict against both defendants. Defendant railway company appeals from an order denying its separate motion for judgment notwithstanding the verdict or for a new trial.

It is insisted on this appeal that appellant was free from any negligence which caused the accident, and that Summer met his death through his own want of care. The facts bearing upon these issues are as follows:

Second street in the city of Waseca runs practically north and south and is crossed at right angles by six tracks of defendant company. The five southerly tracks are close together, are enclosed by crossing gates and are not involved here. The sixth track is an industry spur track which crosses the street about 85 feet to the north of the other tracks, and terminates about two blocks to the west. Second street is a paved business street with cement sidewalks on either side as it approaches the industry track from the north. This industry or spur track was constructed across Second street under an ordinance of the city passed in 1901, which granted the right upon a condition, among others, that the company should "at all times, when engines or cars are being moved upon said side track, keep and maintain a flagman at said crossing who shall properly guard and protect travel thereon." The crossing is in the central portion of the city and is used by the public continually, both day and night. The spur track was not frequently used by defendant.

Plaintiff's intestate was killed by a switch engine at the crossing of the spur track and Second street. Summer was coming from the north, and the engine, with two cars attached, was backing up from the west. There was no eye witness to the accident, though two witnesses heard screams at the crossing, and afterwards Summer's body was found a short distance east of the street, with blood indicating that it had been dragged along. Deceased was 62 years of age, was intelligent, and in the possession of all his faculties, unless it be true that he was under the influence of liquor. The accident happened about 9:30 in the evening. During the afternoon Summer had at-

tended an auction a few miles out in the country, and returned to his home about three blocks south of the tracks to leave an article he had purchased; then with a companion he left his home, and was next seen between five and six o'clock in the afternoon in a saloon on Second street about two blocks north of the crossing. He alternated between this saloon and one across the street until about nine o'clock when he started to go home, taking the sidewalk on the west side of Second street. He was seen to stop for a moment at a restaurant on Second street, and was then observed walking toward the crossing, and less than a block away from it. It had been raining and the night was cloudy and dark, though street lights tended to relieve the darkness. Near the track and close to the sidewalk was a coal shed that partially shut off the view to the west; wire was piled up between the coal shed and the track, while on the south side of the track, a short distance away, was a freight house of defendant. It thus may be fairly said that this crossing was a dangerous one, especially on a dark night, as an engine coming from the west would practically come out of a blind alley. There was evidence tending to show that the engine gave no warning of its approach; that its headlight was dim; that the walk approached the crossing from the north on a down grade, and was somewhat slippery, and that there was noise from an electric light plant nearby. It was conceded that there was no flagman at the crossing.

The case was clearly for the jury on the question of defendant's negligence. The absence of a flagman at the crossing in direct violation of the ordinance is alone sufficient evidence of negligence to sustain the verdict in this respect, and we need not consider the other claims of negligence.

The contention that Summer was not struck by the engine, but that he stumbled and fell between the cars, was disposed of adversely to defendant by the verdict, and we must hold that under the evidence this decision is final.

One of defendant's principal claims on the trial was that Summer was drunk. There was certainly evidence that he had been drinking, and that he was not exactly sober, but there was also evidence the

other way. The question of his condition was for the jury; it was fairly submitted to them by the trial court, and the evidence is sufficient to sustain the conclusion that he was sober.

We must then consider the question of the alleged contributory negligence of plaintiff's intestate on the assumption that his faculties were not materially affected by liquor. Having in view the familiar rule that there was a strong presumption in favor of the dead man, and that the burden of proof was with defendant on this issue, we are unable to hold that Summer was guilty of contributory negligence as a matter of law, or that the evidence is such that we ought to grant a new trial. It must be presumed, we think, in the absence of evidence to the contrary, that defendant had not habitually violated the ordinance requiring it to keep a flagman at this crossing, and that its failure to have a flagman there on the occasion in question was the only instance of its violation of such ordinance. We must presume also that Summer knew of the ordinance, had a right to some extent to rely on the assurance of safety given by the absence of the flagman, and did in fact rely on such assurance. Woehrle v. Minnesota Transfer Ry. Co. 82 Minn. 165, 84 N. W. 791, 52 L.R.A. 348. There are other circumstances tending in a measure to excuse his failure to avoid the accident, and we have mentioned some of these in our statement of the facts. Considering the evidence as a whole, we think that reasonable minds might well draw different conclusions on the question, and therefore that the question was properly left to the jury to determine. We find no error in the record, and hold that the verdict has sufficient support in the evidence to prevent our reversing the order appealed from.

Order affirmed.