# JOHN P. POGUE v. GREAT NORTHERN RAILWAY COMPANY.[1]

September 25, 1914.

Nos. 18,713—(224).

**Negligence — evidence.**

1. There is evidence in this case that defendant was negligent in operating a train without a headlight on the engine, and without giving proper signals of its approach.

**Same — unlighted train approaching highway crossing.**

2. A person approaching a railroad track in a lighted automobile in the dark of evening will not be held negligent as a matter of law in not seeing a train approaching without a headlight, where his view is obscured until he is within less than 30 feet of the track, and there is testimony that he looked as soon as he could but did not see the train until it was upon him.

**Conflicting testimony of witness at former trial.**

3. Testimony on a former trial is not conclusive against the party giving it, where his testimony on the later trial is corroborated, even though his explanation of the discrepancy may not impress this court with favor.

**Highway crossing — looking and listening for trains.**

4. A railroad track is in itself a danger signal. The duty of a traveler approaching a railroad track to look and listen for trains is the rule. It is only under exceptional circumstances that he is relieved of this duty. Failure of the railroad company to give expected signals may excuse him in relaxing somewhat in his vigilance, but it does not dispense with vigilance altogether. An instruction which gives the jury to understand that the traveler may wholly omit the duty of looking and listening, simply because he hears none of the customary or required signals of the approach of the train. is erroneous.

**Same — imperfect hearing.**

5. Any circumstance which impedes the exercise of the sense of hearing renders more imperative the duty of the traveler to use his sense of sight.

[1] Reported in 148 N. W. 889.

Note.—Failure to give customary signals at railroad crossing as excusing performance of duty to look and listen, see note in 3 L.R.A.(N.S.) 391.

Action in the district court for Beltrami county to recover $10,000 for personal injury received in driving plaintiff's automobile across defendant's track, and $1,000 for injury to the machine. The answer specifically denied that defendant was guilty of negligence of any kind and alleged that, if plaintiff suffered any personal injury or his automobile was damaged by reason of any collision with defendant's train, it was due to lack of ordinary care on the part of plaintiff and not to any carelessness of defendant. The case was tried before Wright, J., who denied defendant's motion to dismiss the action, and a jury which returned a verdict for $3,500 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Marshall A. Spooner* and *John F. Gibbons,* for respondent.

HALLAM, J.

Plaintiff, driving an automobile in the little village of Wilton, came into collision at a street crossing with a freight train of defendant. This action was brought to recover damages. Plaintiff had a verdict. Defendant asks for judgment notwithstanding the verdict or for a new trial.

Defendant is not entitled to judgment notwithstanding the verdict.

1. There was evidence, proper to be submitted to the jury, tending to prove the negligence of defendant. The collision occurred close to 6 p. m., on the twenty-eighth of October. The headlight of the engine was not lighted. There is also evidence that no bell was rung until almost the moment of the accident, and that no crossing whistle was blown. The question whether the defendant was negligent in these particulars was one of fact for the jury.

2. It is contended that the evidence is conclusive that plaintiff was guilty of contributory negligence. We cannot so hold. Plaintiff's view of the train was obscured by a long string of box cars on an intervening track. The distance between these standing cars and the passing train was less than 30 feet. Not until he passed these

cars could he have a clear view of the approaching train. Plaintiff's testimony as given on this trial was to the effect that, after passing these standing cars, he stopped his automobile and looked up and down the track, did not see anything, and went ahead; that he did not discover the train until "just like a flash of your eye it was right there, and then a blow." It is conceded that if this testimony is believable, plaintiff was not guilty of contributory negligence. The evidence is conflicting as to just how dark it was. Plaintiff's witnesses testified that it was very dark. There is some evidence that the evening was cloudy and gloomy. The lights of the village were lighted. The lights on plaintiff's automobile were lighted. There is evidence that the trainmen were giving signals with lighted lanterns. The trainmen themselves deny this, but it is admitted that they lighted their lanterns for this purpose at Solway, the station above. If it was as dark as plaintiff now claims, it is not unbelievable that he might look and still fail to see the approaching engine beyond the range of his own lights.

3. The doubt as to this branch of the case arises from the fact that upon a former trial plaintiff testified that he did see the train approaching when he was 12 or 14 feet from the track, and that he could have stopped his car in three or four feet, but that he was "flustered" and did not stop. Plaintiff's counsel does not question that such conduct would have been contributory negligence. We are not impressed with plaintiff's explanation as to how he came to give this testimony on the former trial, which is to the effect that he was intoxicated from drinking liquor to relieve his pain, and was guessing, but it appears to us that inasmuch as his testimony on this trial is somewhat corroborated, his former testimony is not conclusive against him.

We are not confronted with the question whether this contradiction in plaintiff's testimony on the two trials is ground for granting a retrial of the case, for we are of the opinion that a new trial should be granted upon another ground.

4. The court instructed the jury as follows:

"Now, if you should find in considering this testimony that no bell was rung, that no whistle was blown, and if you should take into

127 M.—6.

consideration the weather and find, as some of the witnesses have testified, that the wind was blowing strongly from the southeast, and you should find that the plaintiff approached the crossing and failed to stop, look and listen, you would have a right to take into consideration all those things; the absence of a headlight, if you found that such headlight was needed, that it was dark enough for it and that there wasn't any, to determine the ultimate question as to whether or not he was negligent in not stopping, looking and listening."

This instruction does not correctly state the law. The law is well settled that a person about to cross a railroad track at a public high-way must look and listen for approaching trains, unless he is in some way prevented from doing so without fault of his own. Wardner v. Great Northern Ry. Co. 96 Minn. 382, 104 N. W. 1084. A railroad track is in itself a danger signal, warning one about to go upon it to use his sense of sight and hearing, to the extent of his opportunity, to discover approaching trains. Woehrle v. Minn. Transfer Ry. Co. 82 Minn. 165, 169, 84 N. W. 791, 52 L.R.A. 348. It is also well settled, however, that the duty to look and listen is not an a¹ one, that a higher vigilance is required under some circumstances than under others, and that circumstances may be such as to relieve the traveler from the duty altogether. But the duty to look and listen is the rule. It is only under exceptional circumstances that the traveler is relieved of this duty. There were no exceptional circumstances in this case which would wholly excuse plaintiff from looking and listening, unless it can be said that the failure of defendant to give proper signals and its failure to have the headlight burning are such circumstances.

There are cases which hold that a person cannot rely upon signals to remind him of danger, that the failure of the traveler to look and listen is negligence or not, according to the circumstances, but that the negligence of the employees of a railroad company in failing to whistle or ring a bell is no excuse for negligence on the part of the person about to cross in failing to use his senses to discover danger. Sandberg v. St. Paul & Duluth R. Co. 80 Minn. 442, 83 N. W. 411;

Carlson v. Chicago & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L.R.A.(N.S.) 349, 112 Am. St. 655.

On the other hand, numerous cases hold that when a traveler is approaching a railroad track he may, in regulating his own conduct, have a right to presume that the railroad company will act with proper care in giving signals of the approach of its trains. Loucks v. Chicago, M. & St. P. Ry. Co. 31 Minn. 526, 18 N. W. 651; Hutchinson v. St. Paul, M. & M. Ry. Co. 32 Minn. 398, 21 N. W. 212; Hendrickson v. Great Northern Ry. Co. 49 Minn. 245, 51 N. W. 1044, 16 L.R.A. 261, 32 Am. St. 540.

We think these cases may be harmonized, and that the rule deducible from them is that the traveler may, in regulating his conduct, have some regard to the presumption that the railroad company will give proper signals, and, if he hears none, the same preparedness and caution will not be expected of him as would be required in case proper signals were given; but he cannot in any case wholly omit the duty of looking and listening simply because he hears none of the customary or required signals of the approach of a train. Newstrom v. St. Paul & Duluth R. Co. 61 Minn. 78, 63 N. W. 253; Klotz v. Winona & St. Peter R. Co. 68 Minn. 341, 71 N. W. 257; Woehrle v. Minn. Transfer Ry. Co. 82 Minn. 165, 84 N. W. 791, 52 L.R.A. 348. In other words, the failure of the defendant to give expected signals may excuse a traveler in relaxing somewhat in his vigilance, but it has never been held to dispense with vigilance altogether. If such were the law, then there would be little left of the rule which requires the traveler to look and listen, for the rule is only applied as bearing upon the question of his contributory negligence, and that question is never reached, unless there is some negligent act or omission in the operation of the train. The vice of the instruction is in this: It gave the jury to understand that, even if plaintiff wholly failed to look and listen, they might still find that he was not negligent, because of the failure of defendant to give signals, or because of the blowing of a strong wind. This, as we have above indicated, is not the law. The failure of defendant to give signals would not excuse plaintiff from looking and listening for approaching

trains.    We are of the opinion that this error was not cured by other portions of the charge.

5. It should also be said that the jury might fairly infer from the charge that the existence of a wind "blowing strongly from the southeast" would tend to relieve plaintiff from his duty of vigilance. On the contrary, this circumstance impeding the exercise of the sense of hearing rendered more imperative the duty of plaintiff to use his sense of sight.    Marty v. Chicago, St. P. M. & O. Ry. Co. 38 Minn. 108, 35 N. W. 670; Schneider v. Northern Pacific Ry. Co. 81 Minn. 383, 84 N. W. 124.

Order reversed and new trial granted.