### CARRIE HAUGEN v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

January 14, 1916.

Nos. 19,487—(159).

**Railway — accident at street crossing — negligence.**

1. Plaintiff was struck by a train while crossing a railroad track at a street crossing protected by safety gates. There is evidence that the train approached the crossing at a high rate of speed, without signals and without a seasonable closing of the gates. This is evidence of negligence.

1 Reported in 155 N. W. 1058.

Note.—For duty as to operator of safety gates at railroad crossing, see note in 33 L.R.A. (N.S.) 988.

As to duty of traveler going on crossing when gates are open, see 4 L.R.A. (N.S.) 521.

**Same — safety gates open — second look for trains.**

    2. Plaintiff testified the gates were open as she passed them, that when within six or seven feet of the gates she looked and saw no train. It may not have been then within her sight. In view of the assurance and invitation conveyed by the fact of the open gates it cannot be said that she was negligent as a matter of law in not looking again.

**Verdict excessive.**

    3. The evidence as to injuries caused by the accident is such that it does not sustain a verdict for the amount awarded.

Action in the district court for Clay county to recover $3,000 for injury received by plaintiff while walking across defendant's railway tracks. The case was tried before Roeser, J., and a jury which returned a verdict for $3,000. From an order denying its motion for judgment notwitstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*C. W. Bunn* and *D. F. Lyons,* for appellant.

*Christian G. Dosland* and *Victor Oleson,* for respondent.

HALLAM, J.

1. In the city of Fargo, North Dakota, defendant's trains, as they approach the depot, cross Broadway, the principal thoroughfare of the city. Three parallel tracks cross this street. The approach to the tracks along Broadway is protected by safety gates, adjusted so that when down they cover both the street and the sidewalk. On April 4, 1913, plaintiff was passing along Broadway and was struck by one of defendant's regular passenger trains approaching the depot from the east. Plaintiff recovered a verdict. Defendant appealed from an order denying a motion for judgment or for a new trial.

The gateman was at his post and it was his duty to lower the gates a reasonable time before the arrival of the train. There was testimony on behalf of plaintiff that the train approached at a speed of 30 miles an hour without giving any signal of its approach and that the gates were not seasonably closed. This is evidence of negligence on the part of defendant.

2. The question of plaintiff's negligence is a more serious question. The accident happened in the day time. Plaintiff testified that when

within six or seven feet of the gates she looked to the east and did not see the train. If she looked at this point she could see down the track a distance of 650 feet. She was still about 40 feet from the place where she was struck. If the train approached Broadway at 30 miles an hour it is possible that it was not in sight when plaintiff was at the point where she said she looked. Under ordinary circumstances it would be difficult to excuse her from not looking again, for a traveler crossing railroad tracks must use his senses continually. Sandberg v. St. Paul & Duluth R. Co. 80 Minn. 442, 83 N. W. 411; Carlson v. Chicago & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L.R.A.(N.S.) 349, 112 Am. St. 655. There is nothing in this case to excuse her, unless it be the fact that the safety gates were open. She testifies positively that they were open. Several other witnesses testified positively that they were closed. In most cases, however, the attention of these witnesses was called to this matter at a time after plaintiff had passed the gates. The evidence that they were closed when she passed them is not so overwhelming that we can say that there was no issue of fact on this point.

The question of how far a traveler may rely upon the fact that safety gates are open has been several times considered by this court. Woehrle v. Minnesota Transfer Ry. Co. 82 Minn. 165, 84 N. W. 791, 52 L.R.A. 348; Stegner v. Chicago, M. & St. P. Ry. Co. 94 Minn. 166, 102 N. W. 205; Flygen v. Chicago, M. & St. P. Ry. Co. 115 Minn. 197, 132 N. W. 10; Sumner v. Chicago & N. W. Ry. Co. 122 Minn. 44, 141 N. W. 854; Wardner v. Great Northern Ry. Co. 96 Minn. 382, 104 N. W. 1084; Lang v. Northern Pacific Ry. Co. 118 Minn. 68, 136 N. W. 297. These decisions establish the rule that, where a railroad company supplies safety gates at a crossing which it is in the habit of closing as its trains approach, the fact that the gates stand open is an assurance of safety and an invitation to travelers to pass; that this is not, however, an unqualified assurance or invitation, for the traveler may not even then close his eyes and ears to danger. If he relies exclusively upon the assurance or invitation which is implied by the open gates, he is negligent. If he does not rely exclusively on such assurance, then the question is whether he exercises a degree of care that is reasonable under the circumstances, and that question must be one of fact for the jury, unless the facts leave the inference of negligence so plain that reasonable men could not draw differ-

ent conclusions therefrom. In view of this rule we cannot say that under the circumstances of this case plaintiff was guilty of contributory negligence as a matter of law. This accident happened at a busy hour of the day, and at a time when traffic on the street was heavy. We conceive that where a watchman is stationed at a crossing for the purpose of lowering gates on approach of a train, the public have a right to expect that, the greater the need of closing the gates, the greater the likelihood that they will be closed, and the greater is the assurance of safety if they are not closed. Open gates on a thoroughfare crowded with travel is a stronger assurance that no train is approaching than open gates at a crossing of an unfrequented street. Where a railroad company operates a passenger train across the principal thoroughfare of a city at a time when traffic is heavy, the failure of a watchman to lower the gates in the customary manner is such an assurance of safety that a pedestrian, who looks before starting across the tracks, cannot be held negligent as a matter of law in failing to look a second time. Defendant's motion for judgment must accordingly be denied.

3. The jury awarded damages in the sum of $3,000, the full amount demanded in the complaint. The evidence as to injury was very meager. No bones were broken, no limbs mutilated and no part of the body scarred. Plaintiff was in the hospital after her injury under the care of a physician and hospital nurses. Neither the physician nor any nurse was called as a witness. Nor was any other physician called. Plaintiff described her present condition as follows:

"Q. What seems to be the trouble with you, Miss Haugen? A. The back fail me and the right arm. The right arm is stiff. Q. And your back? A. Yes, sir. Q. Anything more? A. I got struck bad in the head. Q. Is your memory as clear now after this accident as before? Can you think as clearly? A. I can't hardly remember anything from one day to the other. Q. After this accident? A. No. Q. Could you remember things well before the accident? A. Yes, sir, for quite a long time. Q. Is that the reason why you can't answer the question as clearly, because your head isn't well? A. That is the reason. Q. Was your head injured in this accident? A. Yes, sir. Q. You say your head has not been right since that time? A. No, it hasn't been right. Q. You can't remember clearly? A. No. * * * Q. I will ask you if you have any

headaches? Oh, yes, most all the time. Q. Did you have trouble with headaches all the time before the accident? A. No, I had pretty good head. * * * Q. Can you walk as well now as you could before this accident? A. No, I can't. Q. Why can't you walk as well? What seems to be the trouble, if you can tell the jury? A. My back and side pains me. Q. When you walk can you walk straight or do you have to limp a little? A. I can't walk straight." Though she complained of loss of memory her memory of the facts surrounding this accident was very clear.

Other testimony goes somewhat more into detail but adds little to the above. From this alone the jury were asked to diagnose plaintiff's physical condition, to make a prognosis of her future, and to determine the cause of her ailments. We are of the opinion that they could not reasonably do so. They could only speculate as to these important matters. In some cases medical or expert testimony may not be necessary in order to enable a jury to determine the nature of an injury or its cause. In other cases such testimony is necessary to any intelligent understanding of the injured person's condition and prospects. This seems to us such a case. In this case the jury could see that some injury was sustained, and the testimony would sustain a verdict in some amount. But we are wholly unable to see how they could fix her damages at any substantial amount. Courts must exercise much circumspection in sustaining large verdicts in cases where no injury can be seen, and where the word of the person injured is the only evidence of its extent. Johnson v. Great Northern Ry. Co. 107 Minn. 285, 119 N. W. 1061. Taking the evidence as its stands, we think the damages awarded were so clearly excessive and manifest prejudice and passion on the part of the jury. Plaintiff's counsel in his brief says, "if this verdict is excessive, this court will reduce it to the proper amount." The trouble here is that the evidence leaves us without chart or compass to guide us in arriving at any amount. The damages may not be too large. From this evidence we cannot tell; yet the burden of proof is upon plaintiff. We are of the opinion that a new trial must be granted without condition.

So ordered.