JAMES H. CARTER v. DULUTH YELLOW CAB COMPANY
AND ANOTHER.[1]

February 11, 1927.

No. 25,801.

**Witness cannot be impeached by proof he violated a city ordinance.**

1. A violation of a city ordinance is not a crime, within the meaning of G. S. 1923, § 9948, and hence cannot be proved on trial to impeach a witness.

**Refusal of requests correct.**

2. Requests for instructions set forth in the opinion were properly refused.

**Language of appellate court not necessarily fitted for instruction.**

3. The fact that a request is couched in language of an appellate court does not necessarily mean that it must be given to the jury as an instruction.

**Verdict for $3,000 not excessive.**

4. Verdict not excessive. The trial court's approval of a verdict as not excessive invokes the general rule applicable to other discretionary orders.

Appeal and Error, 4 C. J. p. 836 n. 74; p. 864 n. 33.
Crime, 16 C. J. p. 53 n. 42.
Damages, 17 C. J. p. 750 n. 23, 25; p. 762 n. 1; p. 763 n. 4; p. 764 n. 8; p. 1075 n. 10; p. 1091 n. 85; p. 1114 n. 98.
Trial, 38 Cyc. p. 1595 n. 3, 4; p. 1601 n. 52; p. 1625 n. 65; p. 1673 n. 40, 42.
Witnesses, 40 Cyc. p. 2608 n. 65.

See note in L. R. A. 1915F, 30; 8 R. C. L. 674; 2 R. C. L. Supp. 638; 5 R. C. L. Supp. 480; 6 R. C. L. Supp. 521.

[1]Reported in 212 N. W. 413.

Defendants appealed from an order of the district court for St. Louis county, Magney, J., denying their motion for a new trial. Affirmed.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for appellants.

*Michael S. Bright* and *Nelson & Cedergren,* for respondent.

WILSON, C. J.

Defendants appealed from an order denying a new trial.

Plaintiff recovered a verdict for $3,000 for personal injuries arising out of an automobile collision. He was riding on the right hand seat of an automobile with one Anfang, who was driving south at a speed of about 12 to 15 miles per hour. Defendant Sheppard, acting for defendant cab company, drove a cab in a westerly direction at a speed of 20 to 25 miles per hour. It was night and the streets were slippery. When the auto was three-fourths of the way across the intersection the cab struck its left front side. The two cars were near the southwest corner of the street intersection. The collision turned the auto to face north. The driver of the cab lost control and it swerved to the southwest across the curb on the east and west street, broke a water hydrant and split a tree. Anfang's car was badly damaged.

1. In an effort to impeach the witness Sheppard, under authority of G. S. 1923, § 9948, plaintiff on cross-examination proved that he had been convicted of violating a traffic ordinance by driving through a safety zone. We cannot adopt the theory of defendants that this was error because the ordinance was not put in evidence. Nor can we accept the assertion that the conviction was illegal on the theory that the ordinance was illegal as being in conflict with L. 1925, p. 673, c. 416, § 26, as indicated in State v. Mandehr, 168 Minn. 139, 209 N. W. 750. Safety zones are recognized by the present motor vehicle law. Laws 1925, p. 672, c. 416, § 19. Our attention is not directed to any law that prohibits municipalities from passing ordinances for the establishment of regulations of safety zones.

A more serious question is involved. The statute permits the impeachment of the witness by proving his conviction of crime against the state which includes misdemeanors as well as felonies. Viola-

tion of a city ordinance is not a criminal offense against the state. City of Red Wing v. Nibbe, 160 Minn. 274, 199 N. W. 918; State v. Nelson, 157 Minn. 506, 196 N. W. 279. No good could come from holding that all citizens who violate traffic ordinances are criminals. They are not and the law protects them from such classification. It was error to receive the testimony relating to the witness' conviction of a violation of the traffic ordinance. From the character of the disclosure we are of the opinion that the error was without prejudice.

2. The court charged the jury that it was as a general rule the duty of the defendants to give the right of way to the person approaching the intersection from the right, that this rule was not unyielding and that the driver on the right was not absolved by the statute from due care. The court also said:

"If a driver approaching a street intersection sees a car coming from his right, and so near that there is reasonable danger of collision if both cars proceed, it becomes his duty to yield the right of way."

Defendants complain because the court refused to give a request in this language:

"The defendant Sheppard might have a right, under the circumstances, if he were the first on the intersection, to assume that the driver of the other car would perform the duty imposed by law and courtesy, so to reduce his speed as to allow the defendant Sheppard, if he was there first, to clear the crossing in safety."

The request was argumentative in form and the court properly declined to give it. The trial court is not compelled to call specific attention to certain definite facts and tell the jury that they justify certain inferences. Ordinarily it is better not to do this. It is sufficient to state the facts and the respective claims of the parties. Appellants claim this language to be substantially the same as used by this court in Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484. Perhaps so. The fact that an appellate court uses language in an argumentative way in support of a conclusion does not mean that such language is to be given to a jury in the

form of an instruction. Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998. Mr. Justice Dibell in Stanger v. Thompson, 153 Minn. 488, 491, 190 N. W. 897, said: "Statements of the law found in reported decisions or in texts are not always good for juries and sometimes they are misleading." See also Roach v. Roth, 156 Minn. 107, 194 N. W. 322.

3. Defendants also assign as error the refusal of the court to give the following request:

"The nature, extent and probable duration of the injuries and nervous disturbances, inferable from the subjective symptoms, are too uncertain and conjectural to form the basis for any large verdict * * *. Future consequences which may or are likely to result from the injuries are too speculative to be considered. Juries must exercise much circumspection in sustaining large verdicts in cases where no injury can be seen, and where the word of the person injured is the only evidence of its extent."

This language is also largely taken from the discussion of this court in Lowe v. Armour Packing Co. 148 Minn. 464, 182 N. W. 610. The writer used the first sentence as applicable to the facts in that case, but not with the idea of stating a general rule of law appropriate for an instruction to a jury. The next sentence which is a quotation from the case of Olson v. C. M. & St. P. Ry. Co. 94 Minn. 241, 102 N. W. 449, loses much of its application when disconnected from the language immediately preceding it in its original utterance, namely:

"In a personal injury action the plaintiff is entitled to recover damages for all of the direct consequences of his injuries, future as well as past, but he can recover only for such future consequences as are shown, to a reasonable certainty, will result from his injuries."

This is the true rule. Defendants requested that the judicial comment on the rule be given but not the rule. The third sentence is taken from Haugen v. N. P. Ry. Co. 132 Minn. 54, 155 N. W. 1058, except that the first word "juries" is substituted for the word "courts." Indeed juries do not sustain verdicts; they make them.

The second request is subject to the same criticism as the first. The refusal was correct.

4. Was the verdict excessive? It was liberal. That is not fatal. Plaintiff was thrown against the steering wheel. His side and chest were injured. He was dizzy and faint. He walked across the street and lay on the ground. A few minutes later he went to another place and lay on some lumber. He apparently walked about 24 blocks to his rooming place but claims to have no recollection of this trip. The next day he was poorly and sore. He discovered two large welts on his chest. On the following day he reported for work but his condition became worse, and he was taken to the home of a friend and put to bed. He could not sleep and suffered pain. Five days after the accident a doctor was called. His chest was strapped tightly. The doctor saw him six to eight times. He was sent to his home at Fergus Falls, where he was attended by another doctor who strapped his chest from time to time until in the early part of March. Plaintiff did not sleep well, had poor appetite, suffered pains in his side necessitating the application of a hot water bottle. He frequently had headaches. His normal weight of 170 pounds was reduced to 142 and he became nervous. The accident occurred on January 10, 1926. Until the trial on May 21, 1926, plaintiff had been unable to work and still suffered pain. A doctor estimated that it would take six months longer to recover. Plaintiff left steady employment at $5.50 per day to better himself. He engaged in selling Hoover suction sweepers. In the fall of 1925 at St. Cloud he earned $12.50 per day for three weeks. Then he went to Duluth in the same work and was advertising, as a foundation for selling the sweeper, during a month just prior to the accident. A doctor at the trial estimated that it would be six months before plaintiff could resume his work. Four months had gone by. The jury was permitted by the evidence to find that loss of time alone would amount to $1,500. We are reluctant to attempt to fix a just amount for pain and suffering. That is for the jury. Plaintiff had a severe contusion of the chest causing pain. He also had considerable nerve irritation and exhaustion. Plaintiff's injuries do not

rest upon subjective symptoms alone. His shrinkage in weight, general appearance and nervous condition as disclosed were objective. The amount is not so flagrant as to indicate passion or prejudice on the part of the jury. The learned trial court has approved the verdict, and our limitations command that we be guided by the general rule applicable to other discretionary orders.

Affirmed.