[Civil No. 3031.  Filed April 6, 1931.]

[297 Pac. 875.]

SOUTHERN PACIFIC COMPANY, Appellant, v. DIEGO GASTELUM, Appellee.

Mr. Francis M. Hartman, for Appellant.

Mr. H. O. Juliani and Mr. E. T. Cusick, for Appellee.

LOCKWOOD, J.—This is the second appeal of this case. The first appeal was taken from an order of the lower court granting a new trial on the issue of damages only, and this court held that upon the record a new trial should be granted on all the issues, and so ordered. *Southern Pac. Co.* v. *Gastelum*, 36 Ariz. 106, 283 Pac. 719. The case was retried on the same pleadings in the lower court, and the jury returned a verdict in favor of plaintiff in the sum of $16,372, upon which verdict judgment was rendered, and, from said judgment and the order denying the usual motion for a new trial, this appeal was taken.

There are some ten assignments of error, which raise various legal propositions. The first is that

the evidence is insufficient to establish negligence under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51–59). The majority opinion on the first appeal held that the evidence as given at the first trial did not sustain the verdict, and that if, on the second trial, no other or further evidence of negligence appeared, it was the duty of the trial court to instruct a verdict for the defendant. We have examined and compared the testimony given at both trials, and it appears to us it is much stronger on this issue at the second trial than it was at the first one. The particular act which it is contended constitutes negligence was the pushing of a certain wooden platform against plaintiff by two of his co-employees.

The testimony of plaintiff on this point at the first trial, taking it at the strongest in his favor, was:

"When I tried to get off, my feet from the track, on the outside, they pushed the platform toward me. I stepped on a stone, slipped and after that I don't know what happened."

At the second trial he said:

"Dominguez and I were to lift the platform, and was lifting the platform when Robles rushed up to help, and Dominguez and Robles pushed the platform on me, and caused me to fall. . . . "

Robles on the first trial testified, in regard to the platform:

"Why, I didn't push on it. It slipped that way in the change, in making the change."

On the second trial he said:

"When I made my shift, when I shifted over to get a better grip, then we pushed and Diego fell, fell on us here about."

Dominguez at the first trial testified, referring to the platform:

"Gastelum and I were lifting it up and when we had it already lifted, about three feet Robles came in on the right hand side and placed his hand upon it and in shifting or changing, Mr. Gastelum fell down."

At the second trial he said:

"Gastelum and I started to lift the platform when Robles approximated it, came to help us as we were lifting the platform, and as we were lifting it, taking our time, Robles approached from the right side and gave a considerable push to the platform as he grabbed it, pushing it onto Gastelum, causing him to fall."

The witnesses went into much more detail in their testimony at both trials, but the above fairly summarizes the evidence on the vital issue. It will be seen on comparison that there is considerable difference therein. The substance of the testimony at the first trial is that, in some way, while the parties were handling the platform, plaintiff slipped and fell. The substance of the testimony on the second trial is that, while they were handling the platform, Dominguez and Robles pushed it more or less violently against plaintiff, and that the push was what caused him to fall. We are of the opinion that the testimony at the last trial, if true, was sufficient to take the case to the jury on the question of negligence.

It is urged, however, by defendant, that any discrepancies in the testimony of witnesses testifying on different trials of a case should be resolved in favor of the earlier testimony, since the transaction is then fresher in their minds. *Adams Express Co.* v. *Ten Winkel*, 44 Colo. 59, 96 Pac. 818; *Steele* v. *Kansas City Southern Ry. Co.*, 265 Mo. 97, 175 S. W. 177. This is an excellent rule to guide either a court or jury in passing on the weight of the evidence, but we are of the opinion that under the authorities it is not one which may be invoked in an appellate court as being conclusive upon the jury in the lower court.

The true rule is that the question is one for the triers of fact, and if, notwithstanding this contradiction, they choose to believe the later testimony rather than the earlier, it is not for the appellate court to disturb their conclusion. *Pogue* v. *Great Northern R. Co.,* 127 Minn. 79, 148 N. W. 889; *Katz* v. *North Kansas City Development Co.,* (Mo. App.) 14 S. W. (2d) 701. It is true, as urged by defendant, that the Supreme Court of the United States has said in many cases that actions under the Federal Employers' Liability Act are controlled by the principles of law as interpreted by the federal courts, and that, if the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the defendant was the cause of death, the judgment must be reversed. *Barrett* v. *Virginian Ry. Co.,* 250 U. S. 473, 63 L. Ed. 1092, 39 Sup. Ct. Rep. 540.

We think, however, that this is nothing more than a corollary of the rule which has always obtained in this court to the effect that, if there is evidence in the record from which a reasonable man could find the facts necessary to support a judgment, the appellate court will not disturb such judgment because another reasonable man could equally well have found different facts. We have never held that a mere scintilla of evidence is sufficient to require the submission of an issue to the jury, nor do we so hold in the present case. There is substantial evidence on the second trial to the effect that the fall which resulted in the injury complained of by plaintiff was caused directly by two of his coemployees pushing a wooden platform against him. We are of the opinion that under the federal rule this was sufficient to take the case to the jury.

The second point raised is the effect of the release pleaded by defendant in bar of plaintiff's right to recover. We laid down the rules governing this re-

lease on the first appeal, and we see no new questions raised in the present one. There is no error in the rulings of the court in regard to the release.

The third point we consider is the action of the court in sustaining plaintiff's objection to defendant's offer in evidence of certain photographs. We are of the opinion this ruling was proper.

The fourth question before us is the giving of a certain instruction. It appears that, at the request of defendant, two doctors were appointed to examine plaintiff. During the trial, in examining the doctors, defendant brought out the fact that plaintiff was in a syphilitic condition, and the court, at plaintiff's request, gave the following instruction:

"In this case in which the plaintiff is basing his action for recovery on account of personal injuries any defense that plaintiff was afflicted with a venereal disease, which prevented or retarded the healing processes, and but for such disease his injuries would not have been so serious and his damage much lessened, is not available.

"In other words, gentlemen, the injury would have been the same whether he was sick or well. If sick, of course, the healing processes might have been interfered with, but this would aggravate rather than lessen his damages."

Plaintiff had not pleaded his syphilitic condition in aggravation of damages, nor was it set up as a defense or partial defense by defendant. We are of the opinion that, since there were no pleadings either asking for aggravated damages or setting the matter up as a defense, the last portion of the instruction was improper, though perhaps, if this were the only error, it would not require a reversal of the case.

The next point we consider is, in our opinion, the vital one in the case, and that upon which it must be reversed. The following instruction was requested by defendant and refused by the court:

"If you should find in favor of plaintiff, then in estimating the damages to which he is entitled, you will take into consideration the earning power of money, and if you award him damages you must determine the present value of his pecuniary loss, if any, calculated as bearing interest at the highest net rate that can be had on money safely invested.

"The present value of a sum of money payable in the future is what that sum is worth if paid presently,—paid now.

"For example, the present value of $1.00 at 6% at the end of one year is found by dividing $1.00 by $1.06,—94 cents; the present value of $1.00 at the end of two years is found by dividing $1.00 by $1.12,— 89 cents; and the present value of $1.00 at the end of ten years is found by dividing $1.00 by $1.60,—62 cents."

. A similar question was before the Supreme Court of the United States in the case of *Gulf, Colorado & Santa Fe Ry. Co.* v. *Moser,* 275 U. S. 133, 72 L. Ed. 200, 48 Sup. Ct. Rep. 49. The following instruction was requested:

"In considering of your verdict on the question of damages, and under the special issues submitted to you in that connection, and thereunder in determining 'such sum of money as if paid in cash at this time would be sufficient to fairly compensate the surviving wife and child,' for their pecuniary loss, you are instructed that in determining the present value of such contributions as plaintiff would probably have received from the continued life of the deceased you will make your calculations on the basis of the amount of your award, bearing interest at the highest net rate of interest that the testimony shows can be had on money safely invested, and secured as shown by the testimony in this case."

This was refused by the trial court. The appellate court said:

"This action sufficed to raise the point now presented. Refusal to grant the request was material error.

*"Chesapeake & O. R. Co.* v. *Kelly,* 241 U. S. 485, 491, L. R. A. 1917F 367, 36 Sup. Ct. Rep. 630, 60 L. Ed. 1117, 1122, 13 N. C. C. A. 673, and *Chesapeake & O. R. Co.* v. *Gainey,* 241 U. S. 494, 36 Sup. Ct. Rep. 633, 60 L. Ed. 1124, announce the applicable rule. In the first we distinctly stated that: 'In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.' *The interpretation approved by us has become an integral part of the statute. It should be accepted and followed."* (Italics ours.)

The Federal Employers' Liability Act, and the decision of the Supreme Court of the United States as to its meaning, effect, and enforcement, is, of course, absolutely binding on every state court. That court has stated explicitly that the interpretation of the statute set forth in the instruction requested by defendant is an "integral part" thereof. If this be true, it was as necessary, in order to support a verdict awarding damages for the future loss of wages, to prove the present worth of future pecuniary earnings on the basis set forth by the Supreme Court of the United States, as it was to prove the negligence and the injury itself. *Western & Atlantic R. Co.* v. *Hughes,* 278 U. S. 496, 73 L. Ed. 473, 49 Sup. Ct. Rep. 231. In the case at bar, plaintiff sought to recover not only for the loss of past, but of future, earnings, and the verdict of the jury was for a lump sum, and it was unquestionably reversible error for the trial court to refuse to instruct the jury that their verdict must be based upon the rule above set forth, so far as future earnings were concerned.

. We are also of the opinion that many of the remarks of counsel for plaintiff during his argument,

complained of by defendant, were perilously close to being, if they were not actually, reversible error, but, since the case must be reversed on other grounds, we assume they will not occur on another trial.

It is not necessary that we discuss the other objections. On account of the failure of the trial court to instruct the jury properly in regard to the rule for determining the value of the future pecuniary loss of plaintiff, the judgment of the superior court of Pima county is reversed, and the case remanded for a new trial.

McALISTER, C. J., and ROSS, J., concur.