FRANK B. McCORD v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

December 29, 1905.

Nos. 14,498—(143).

**Personal Injuries.**

In this, an action to recover for personal injuries received by the plaintiff in a collision between two railway trains of the defendant, *held*, that the trial court did not err in submitting to the jury the question of the permanency of the plaintiff's injuries, and that the damages awarded are not so excessive as to justify any interference with the verdict.

Action in the district court for Ramsey county to recover $10,300 for personal injuries. The case was tried before Hallam, J., and a jury, which rendered a verdict in favor of plaintiff for $7,500. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*A. H. Bright* and *Munn & Thygeson,* for appellant.

*H. A. Loughran* and *J. D. O'Brien,* for respondent.

START, C. J.

The plaintiff, a railway mail agent, was on December 31, 1904, injured by a collision between two of the defendant's railway trains, whereby the mail car in which the plaintiff was riding was derailed and demolished. The collision was caused by the conceded negligence of the defendant, and this action was brought to recover the damages sustained by the plaintiff by reason of such negligence. The only issue on the trial of the action was the amount of damages the plaintiff was entitled to recover. The jury assessed the damages in the sum of $7,500, and the

1 Reported in 105 N. W. 190.

defendant appealed from an order denying its motion for a new trial.

The principal question raised by the assignments of error is whether the trial court erred in submitting to the jury the question of the permanency of the plaintiff's injuries. A consideration of this question necessarily includes the further contention of the defendant that the damages are excessive; for, if the evidence did not justify the submission to the jury of the question of the permanency of plaintiff's injuries, it would follow that the damages are excessive. According to the testimony of the plaintiff's physicians he was suffering from traumatic neurosis, due to the injury and shock he received in the collision of the cars. His condition at the time of the trial was a pitiful one. There was no evidence in the case to indicate that he was malingering. Upon the question of the permanency of his then condition three physicians on a side were called.

The first one called on behalf of the plaintiff testified that:

> There is every reason to believe that the man will not be the man that he once was; that, if you mean recovery in the sense of being what he was before, I don't think he will. If you mean by not recovering that he will stay in the condition that he is just at this time, that again is hard to say, although it is probable that he will have varying conditions that are associated with after disturbances of this sort. He will probably be subject to varying degrees of inability—of disability, rather. I don't expect that he will be the same man that he was.

The second one testified that:

> As compared with the time that I first saw him, he has changed his color. He hasn't the healthful appearance that he had in January. He is very much more nervous. He has developed this spasmodic jerk, this spasmodic inspiratory jerk of the muscles of the chest. He lacks co-ordination; that is, all of us are in our normal state of health able to stand upon the floor with our eyes closed. He can't do it. * * * I don't expect Mr. McCord to remain in just the condition he is now, right now. I think there will be some changes, and there may be some better changes; but this I do believe, that an individual like Mr. McCord, who has that peculiarly constituted nervous system

which he has, and has received this character of an injury, with the ensuing sickness that he has, and presents such a condition as he is now in, that there is a stigma upon his central nervous system which will last him all his life.  *  *  *  There is a peculiar loss of sensation, a loss of feeling in different parts of the body.  That is particularly true.  That is particularly true of the portions of the lower extremities above the thigh and the leg, some small areas on the arm, some small areas over the lower part of the abdomen.  That is a loss of sensation.  It is paralysis of feeling; but you stick a pin into him and he can't feel it—unconscious of it.  Some other areas near by it, the front of the thigh, if I would stick a pin in there he would feel it, but not on top of the thigh.

And the last one that:

I think the probability is that the man will improve a good deal. The man's peculiar makeup is such that I think he is more likely to have permanent results from this than the average man.

The first physician called on the part of the defendant was the doctor who treated the plaintiff at the hospital.  He testified:

Q. At the time when Mr. McCord was discharged from the hospital, what was your opinion as to his being in the way of recovering?  A. I think I gave him about thirty days when he ought to have been able to go to work.  Q. That was the way he seemed to you at the time when he was discharged?  A. Yes.

The second one testified that:

I examined the sensation of the legs, and found that he could not feel touches or pricks of a pin on the right side, almost as high as the navel; on the left side, about the level of the groin. At isolated spots in the legs below these limits he could feel certain touches and certain pricks, not, however, corresponding to the nerve area.  As the result of my examination I concluded that he was suffering from hysteria.  *  *  *  I found no evidence of organic trouble.  *  *  *  It is very difficult to set a time

limit in cases of this sort, because there are so many other factors that enter it that cannot be always controlled; but I should say that a man could make a reasonably rapid recovery. Some cases recover very quickly, others drag along a little bit; but I should say within six months, in my opinion, under favorable circumstances, this man might be entirely well.

The last one testified:

Q. What do you say, doctor, would account for these symptoms that you see in Mr. McCord? You say they are not organic. A. Well, I think, in the first place, perhaps a fright or shock during the accident of which he had complained; another thing, he might have been of a rather nervous or emotional disposition; then the bringing of the suit adds to the mental disturbance, to the mental anxiety, to the nervous condition. Can't find anything else. Q. What would be your opinion as to his future, under proper conditions, and the litigation over? A. I think he will be just as well as ever.

There was other evidence on each side in regard to the nature and permanency of the plaintiff's injuries, but the foregoing quotations from the testimony of physicians fairly indicate their respective opinions. Upon a consideration of the whole evidence we hold that it justified the submission of the question of the permanency of the plaintiff's injuries to the jury. The damages awarded seem to us to be very liberal. The plaintiff, however, had the constitutional right to have his damages assessed by a jury, and we cannot interfere with their finding, unless it appears from the record that it was the result of passion and prejudice on the part of the jury. The record does not justify such a conclusion, and we hold that the damages are not excessive within the meaning of the rule applicable to such cases. The trial court did not err in receiving evidence to show the character of the collision, as it tended to show an adequate cause for the shock which it was claimed he received as a result thereof.

Order affirmed.