WILLIAM JOHNSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 5, 1909.

Nos. 15,955—(222).

**Damages for Injury to Nervous System.**
    When damages are sought to be recovered for injuries to the nervous system, alleged to have been caused by actionable negligence, the utmost circumspection must be exercised to avoid the injustice which is likely to result from the denial of substantial compensation for real injuries and in the award of damage in cases of honest mistake or of cunning fraud.

**Same—Value of Expert Testimony.**
    The value to be attached to the testimony of physicians concerning alleged nervous disorders is to be determined, inter alia, by the extent and character of the examination actually made by the testifying physicians,

[1] Reported in 119 N. W. 1061.

generally as to plaintiff's physiological condition, and especially as to the condition of his nervous system.

**Verdict Excessive—New Trial.**

> A new trial is here granted because a verdict of $4,060 is *held* to have been excessive for an injury which the testimony showed consisted of some soreness or lameness of the back and of some possible, but conjectural, nervous or similar trouble, not reasonably shown to have been caused by the accident.

Action in the district court for Anoka county to recover $10,100, damages for personal injury. The case was tried before Giddings, J., and a jury which rendered a verdict in favor of plaintiff for the sum of $4,060. From an order denying defendant's motion to set aside the verdict and for a new trial, it appealed. Reversed and new trial granted.

*Brown, Albert & Guesmer,* for appellant.

*McElwee & Hollihan* and *John P. Coleman,* for respondent.

JAGGARD, J.

Plaintiff and respondent, a stock buyer, had a stock car placed on the defendant-appellant's industry track for his use. According to the defendant's witness, plaintiff had gone to the defendant's agent and procured his shipping receipt. Thereupon the car was put on the switching list, according to a custom of which the plaintiff must have known. This was before the accident. According to the defendant, it would seem that he procured the receipt before the accident. At all events the engine of the local freight shunted two cars between it and the plaintiff's car. At this time the gang plank of the cattle chute was in position for loading; one end in the chute, and the other in the car. The force of the shunted car tore down the stock chute, and tore off one of the posts, and moved the plaintiff's stock car about half a car length. Plaintiff was thrown to the ground, and in falling struck his back and left side. The jury awarded him a verdict of $4,060. This appeal was taken from the order of the trial court denying defendant's motion for a new trial.

Defendant's argument is "that a new trial should have been granted: (1) because the evidence does not support a finding of liability; (2) because under the evidence the amount of the verdict was excessive and was given through passion and prejudice, and (3) on account of

errors occurring at the trial and excepted to." It was urged on oral argument that plaintiff was precluded from recovery by his contributory negligence. The point was not made in defendant's brief. It is therefore not before us for consideration.

The question whether plaintiff sufficiently bore the burden of showing actionable negligence on defendant's part is presented; but, upon the record, we have concluded that judgment for defendant notwithstanding the verdict should not be directed.

The gist of the present controversy is the size of the verdict. The alleged injury consisted of a lameness of the back and of resulting nervous trouble. That subtle nervous disorders may exist, and that, as our civilization produces less hardy and more highly organized individuals, they tend to occur more frequently, and to result more seriously, is obviously true. It is equally familiar that even the more highly trained specialists cannot readily distinguish some forms of actual nervous derangement from analogous physiological conditions which may have been falsely described through ignorance, or which may have resulted from conscious malingering. A fortiori, in such cases, the testimony of even a reputable practitioner is to be weighed with especial care. The difficulty is, of course, greater where the condition occurs without a lesion—i. e., in cases of traumatic neurosis or traumatic neurasthenia—than where external force has produced a morbid change in the functions or texture of the tissues or organs. Well-considered decisions have gone so far as to hold that no considerable verdict will be allowed to stand upon proof of subjective symptoms only, not only because the existence and extent of such subjective condition depends upon the veracity of the patient, affected as he must be, interested in the outcome of the litigation, but also because of the frequent miracles of recovery after application of "a greenback plaster." None the less the abnormal conditions may be real and result seriously. Much testimony must be admitted, as a matter of course, which is subject to the same objection as to interest. Many verdicts are of unquestionable validity which are subject to the same criticism of their probable substantial injustice. It is clear that wrong is likely to result from denial of substantial damages for real injury, and also from their award in cases of honest mistake or cunning fraud.

It is certain that, where nervous derangement due to an accident is

alleged, courts are called upon to exercise the utmost circumspection. They would pervert their functions if they undertook to prescribe how physicians should proceed, or to dogmatically determine what significance should be attached to the results of their examination. The law, which is fixed, is not authority on physiological science, which is progressive. Judges are not physicians. The courts, as Lord Bowne pointed out, are not the proper places for conducting experiments in inductive science. Indeed, the primary purpose, to subserve which expert evidence on the immediate subject is received, is to advise courts of the results of such questions asked of nature and the conclusions of scientific men prevailing at the time of the trial. Accordingly as opinions of physicians change, the legal effect of facts testified to must also change.

A few elementary principles of diagnostic neurology are now so generally recognized by scientific authority that they should ordinarily be applied. The examination of the patient should be systematic and thorough, and extend to the anatomy of the individual to the extent circumstances demand, to the physiological conditions generally of his person, more specifically his organs likely to be affected, and especially of his deeper and superficial reflexes. The authorities insist that by such an examination, an expert, qualified by learning and experience, is able to determine the true condition of the person examined beyond his power of successful simulation or misrepresentation, and to expose the ignorance, mistake, or fraud of opposing experts. There may be cases so clear that conformity with so exhaustive tests may not be necessary, but doubtful instances must be scrutinized with all known care and tried by all available means.

The record is to be considered in the light of these considerations. Plaintiff called two physicians. Both found a lameness or tenderness of the back. In this they were corroborated by plaintiff's and by defendant's witnesses. This element of damages stands practically undisputed. It would clearly, however, not be sufficient to sustain a verdict to the amount here awarded to plaintiff. The verdict must stand or fall according to the testimony pertaining to the nervous disturbance and its sequences. Neither of plaintiff's two experts appear in the record to have had the necessary knowledge and experience of a specialist in nervous diseases. Indeed, one of them frankly admits

that he did not "claim to be an expert on nervous conditions," and was called as a general practitioner, who as such had attended the plaintiff. Neither testified to have made an adequate examination upon which to rest the conclusions of any serious nervous trouble. The diagnosis of neither purported to be based upon investigation into the normality of plaintiff's physical condition generally, or of his organs or of his deeper or superficial reflexes. The examination was not systematic. Indeed, it was extremely limited and cursory. It amounted at most to a partial investigation into the loss of sensation in the legs. The most significant item was that at places "the hair has turned white." It was frankly admitted, however, that this could not have been connected with the accident.

The two physicians called by the defendant testified that they had made thorough and scientific examination of plaintiff's person. They examined "his eyes, his feet, and his legs, * * * his lungs, heart, abdomen, his back, his nervous sensation, or knee jerks, and in fact everything connected with a general examination." The urine on analysis was found normal. The record itself demonstrates the competency of these physicians as experts. They concluded that the plaintiff was not and had not been suffering from "any trouble with his nervous system, or with his spinal column"; that they "could find nothing the matter with him as a result of the injury he had received" except tenderness and soreness in the muscles of the back, from which his recovery would be comparatively quick. It is evident that the expert testimony necessitates the belief that plaintiff was not seriously injured.

It remains to examine plaintiff's testimony and his conduct. That testimony must be considered, not so much in the light of the plaintiff's interest in the outcome of the litigation, which is naturally for a jury to weigh, as of plaintiff's inevitable lack of technical knowledge necessary to the correct estimate of his physical condition and of the cause of any deviation from the normal. His own evidence, on direct and on cross examination, taken as a whole, does not produce any strong impression that he was much hurt, except in his back, or that the troubles of which he complained could reasonably be traced to the accident. This view of his injury is strengthened by his own and other testimony as to his active conduct of his affairs after the acci-

107 M.—19

dent. The natural inference is that he transacted his business much the same after as before the accident. One wholly disinterested and unimpeached witness, for example, testified that he had seen plaintiff at least once or twice a month since the accident coming in with his shipments, in and around the yard, in the cars, getting on and off, just as he had always been doing. It is significant that, when the accident occurred, plaintiff went on with his work and complained of being hurt to no one at the time, and that his silence on the subject lasted until several months afterwards.

Under the circumstances, it is clear that it is impossible to sustain the verdict of over $4,000 for the injury that has actually been shown. In Goss v. Goss, 102 Minn. 346, at page 348, 113 N. W. 690, at page 691, Chief Justice Start said: "The rule is now too well settled to be seriously questioned that the trial court may, in actions of tort, as well as in actions on contract, in the exercise of a sound judicial discretion, when it deems a verdict excessive and the result of passion and prejudice on the part of the jury, deny a new trial on condition that the prevailing party remit such sum as shall leave the recovery not excessive in the judgment of the court. When, however, the damages are so excessive, and the circumstances as disclosed by the evidence as to other issues are such, as to indicate a fair probability that the jury were influenced by passion or prejudice in the determination of the other issues, a new trial should be granted. Whether in any given case a new trial should be granted or denied on condition that the verdict be reduced rests largely in the sound judicial discretion of the trial court."

The real question in this case is whether the damages should be reduced or a new trial granted. We are of the opinion that the verdict was so excessive that the only proper course to pursue is to grant a new trial.

Reversed and new trial granted.