## ALONZO J. KITMAN v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

February 3, 1911.

Nos. 16,856—(213).

**Correctness of railway records question for jury — movement of trains.**

In a personal injury action, wherein it was claimed that the tender to appellant's engine was defective, and the question in dispute was whether the engine left the roundhouse at a certain time, held, appellant's records, purporting to show the time all engines left the roundhouse to go upon the road, a record claimed to show the time when repairs were made upon

[1] Reported in 129 N. W. 844.

engines, and a train dispatcher's record, purporting to show the movement of all trains, were not conclusive evidence that the engine left the roundhouse at the time claimed by appellant. The validity and correctness of the records were for the determination of the jury, and were properly submitted to the jury, to be considered in connection with all the evidence pertinent to the issue.

### Admission of employment — evidence inadmissible.

This action was commenced against the Chicago, Burlington. & Quincy Railroad Company, and the complaint alleged that the plaintiff was in the employ of that company. The answer admitted the employment by that company, and by special defense alleged that plaintiff was in the employ of the Chicago, Burlington & Quincy Railway Company, and had released that company from further liability by accepting benefits from the relief department thereof. *Held*, the admission that the plaintiff was in the employ of the railroad company was controlling, and that evidence offered in support of the special defense was properly rejected.

### Excessive damages.

It does not appear that the verdict was excessive.

Action in the district court for Ramsey county to recover $30,-000 for personal injuries sustained while employed by defendant as a locomotive fireman. The complaint alleged that the engine was unsafe in that one of the stay-chains or safety-chains coupling the locomotive and the tender was lost, and in that the safety-hangers upon the brake beams of the tender had been lost. The answer denied that the injury was caused by defendant's negligence, admitted that plaintiff was in defendant's employ, as stated in the opinion, and for a special defense alleged that long prior to February, 1906, the time of the accident, the Chicago, Burlington & Quincy Railway Company organized an association consisting of itself and such of its employees as should join the same and contribute thereto, for the purpose of maintaining a relief fund to be used in the payment of those employees contributing thereto who should be entitled thereto; that by the regulations in case any deficiency should arise, in case other receipts to the fund were insufficient to pay the benefits due the members, the deficiency should be made up by the railroad and railway companies, and in case a member should bring suit against defendant for damages on account of injuries to such member, pay-

ments for benefits from the funds should cease until the action was discontinued, or if it should be compromised or proceed to judgment, all claims upon the relief fund should be thereby precluded; that plaintiff became a member in December, 1903, and remained an employee of the railway company until July 1, 1907, when he became an employee of defendant, and he was a member of the relief fund when the accident happened and until July, 1908, and after the accident received and accepted certain sums from the relief fund in full release and discharge of said claims. On July 1, 1907, the defendant railroad company succeeded the Chicago, Burlington & Quincy Railway Company "in the operation and enjoyment of the franchise." The other facts are stated in the opinion.

The case was tried before Hallam, J., and a jury which returned a verdict in favor of plaintiff for $11,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Morton Barrows,* for appellant.

*Barton & Kay,* for respondent.

LEWIS, J.

Plaintiff was employed as fireman on engine No. 1917 at La Crosse, Wisconsin, and he claims that the engine, pulling a string of freight cars, left Grand Crossing, near La Crosse, on the evening of February 19, for St. Paul, and that the tender became derailed near Prescott, resulting in injury to him. Negligence was charged in failing to provide the tender and engine with proper safety chain connections and proper brakebeam supports. Plaintiff recovered a verdict of $11,000, and the appeal presents three questions for review:

1. Was there any trustworthy evidence to establish negligence? Two witnesses testified for plaintiff that they were employed to do some repairing on the engine at Grand Crossing about eight o'clock on the evening of February 19, that the proper chains were missing at that time, and that the engine was moved out before being repaired. To meet this testimony, defendant introduced in evidence a record purporting to contain a correct statement of the time every

engine was fired up and left the roundhouse. This record, under date of February 19, 1906, contained the entry: "Engine 1917 ordered for 5 p. m. extra north, left the roundhouse at 4:10 p. m. Crew, W. H. Davis and Kitman." Another record was introduced in evidence to prove that no repairs were made on engine 1917 on February 19, 1906.

A paper purporting to be the train dispatcher's record was also introduced in evidence by defendant, which showed that the train to which engine 1917 was attached left Grand Crossing at 5:20 p. m. February 19, 1906. This record also showed where the train was at various points on its passage north. The engineer testified that the train left La Crosse at five o'clock in the afternoon. There was some testimony tending to corroborate plaintiff's claim that the engine did not leave the roundhouse until later than the records show. Attention is also called to some apparent omissions in the train order record, apparently bearing on its accuracy. We are asked to hold that these railroad records must be received with absolute verity as establishing the fact that the engine left Grand Crossing prior to the time it was claimed to have been examined by plaintiff's witnesses. The trial court was of the opinion that the accuracy of the records and the veracity of the witnesses were for the jury, and submitted the question with proper instructions. While records of this character are entitled to careful consideration, and cannot be lightly brushed aside, we cannot say in this instance that they must be accepted as final on the disputed point.

2. This action was commenced against the Chicago, Burlington & Quincy Railroad Company, and the complaint alleged that plaintiff, at the time of injury, was in the employ of that company, which was duly organized under the laws of Illinois, and was engaged in operating a railroad. The answer admitted that plaintiff was in defendant's employ on the nineteenth day of February, 1906, denied liability, and alleged as a separate defense that long prior to that date the Chicago, Burlington & Quincy Railway Company had organized a benefit relief association, known as the Relief Department of the Chicago, Burlington & Quincy Railway; that plaintiff had become a member of the association in 1903, and continued to be a

113 M.—23.

member until long after the accident, had accepted benefits there-from, and had released all claims against the railway company. The court ruled out evidence offered to substantiate this defense, on the ground that it furnished no proof of release against the defendant, the railroad company.

We agree with the trial court that the admission in the answer that plaintiff was employed by the railroad company at the time of the accident is not controlled by the special defense that he was employed by and released the railway company from all liability. The admission was definite, and plaintiff was justified in relying on it at the trial without proof. If defendant intended to prove that plaintiff was in fact employed by the railway company, that issue should have been squarely raised by a denial, and not by an admission. While the evidence offered and rejected may have tended to prove that plaintiff had received benefits from another corporation, it did not necessarily prove that plaintiff had released the defendant railroad company. It does not appear from the pleadings that the two companies are identical, and, if they were, the admission controls. No motion was made to amend the answer, and appellant is in no position at this time to complain of the construction put on the pleadings by the trial court.

3. Was the verdict so large as to indicate passion and prejudice? The medical testimony was conflicting, as in most cases of this character. The injuries claimed were supported principally by what are known as subjective symptoms; but that the plaintiff was seriously and permanently injured can hardly be disputed on the evidence. The charge that the jury were actuated by passion and prejudice is not sustained, and the facts in Johnson v. Great Northern Ry. Co., 107 Minn. 285, 119 N. W. 1061 were quite different. Our views of this question cannot be better expressed than in the words of the trial court: "These cases where the immediate injury is comparatively small, but which involve nervous disorders, are among the most difficult of any with which the court has to deal. In Johnson v. Great Northern Ry. Co., 107 Minn. 285, the court makes clear the necessity of the utmost circumspection in such cases. On the other hand, the opinion in the case of Galloway v. Chicago, M. &

St. P. Ry. Co., 56 Minn. 346 [57 N. W. 1058, 23 L.R.A. 442, 45 Am. St. 468], makes it clear that such cases may justify the allowance of very substantial damages. There were many objective facts testified to in this case, and not disputed, from which the jury might fairly find that plaintiff has been and is suffering from a serious ailment. The opinions of his three attending physicians, based largely on those objective facts, as well as the subjective symptoms, are that his injury is permanent, and that he will be permanently incapacitated for any serious work. If these facts are true and these opinions are correct, the damages are not too large. The jury has evidently so found, and I cannot disturb their verdict. See Southern Pac. Co. v. Rauh, 49 Fed. 696 [1 C. C. A. 416]; McCord v. Minneapolis, St. P. & S. S. M. Ry. Co., 96 Minn. 517 [105 N. W. 190]; Masteller v. Great Northern Ry. Co., 103 Minn. 244 [114 N. W. 757]."

Affirmed.

JAGGARD, J., took no part.