BLOCK, by guardian *ad litem,* Respondent, vs. SEIBOLD,
Appellant.

*January 12—February 7, 1928.*

*Automobiles: Injuries to pedestrian at street intersection: Evidence:
Sufficiency: Excessive damages: Injury to hip bone.*

1. In an action to recover for injuries sustained by a pedestrian
   who was struck by an automobile at a street intersection, the
   question as to plaintiff's contributory negligence at the time
   of the accident is for the jury. p. 116.
2. While the form of the question as to proximate cause was
   objectionable as it left uncertain which of three grounds of
   negligence was, in the opinion of the requisite number of
   jurors, *a* or *the* "proximate cause," the result of the trial be-
   low will not be changed on that ground where such objection
   was first raised on appeal and from a consideration of the
   record the supreme court cannot say that justice has not been
   done. p. 116.
3. An award of $3,583 for plaintiff's injuries, consisting of a large
   wound at the crest of the right hip bone, leaving a permanent
   scar, with a portion of the hip bone dragged off, together with
   a number of contusions and a scar on the right knee, is *held*
   excessive and is reduced to $2,500, in view of the absence of
   testimony as to the permanency of the injuries. p. 117.
   CROWNHART, J., dissents.

APPEAL from a judgment of the municipal court of Outa-
gamie county: THEODORE BERG, Judge. *Modified and af-
firmed.*

This action was commenced November 3, 1926, to recover
damages for personal injuries sustained by plaintiff from de-
fendant's automobile on September 14, 1926.

The plaintiff, sixteen years old, a junior in the high school,
at about 7:45 a. m. was walking south on the east side of
North Superior street in the city of Appleton and came to the
intersection of West Wisconsin avenue, running east and
west. This latter street had a curved, tarred macadam sur-
face with a depression or gutter about fourteen inches deep
along the north side, which was crossed at the extension of
the Superior street sidewalk by an iron apron extending onto

the highway. While at or near the end of such apron she was struck by the automobile driven by defendant approaching from the east on Wisconsin avenue.

The jury by special verdict at the trial in February, 1927, found, among other things, by answers to questions 2, 3, and 4, respectively, that the defendant failed to exercise ordinary care in respect to speed; to keeping a reasonable lookout for plaintiff; to keeping her car under proper control; and by question 5 that such failure was the proximate cause of plaintiff's injuries.

They found that the plaintiff did not fail to exercise ordinary care in respect to keeping a proper lookout, and assessed her damages at $3,583.

After motions by the respective parties judgment was entered March 4, 1927, for said sum and costs, and defendant appeals.

For the appellant there was a brief by *Francis J. Rooney* of Appleton and *Martin, Martin & Clifford* of Green Bay, and oral argument by *G. F. Clifford.*

For the respondent there was a brief by *Keller, Keller & O'Leary* of Appleton, and oral argument by *L. Hugo Keller.*

ESCHWEILER, J. The defendant appellant urges three objections to the result below, namely: as to the contributory negligence of the plaintiff; the form of the fifth question of the special verdict; and the amount of damages.

By plaintiff's version—and in many of its material features she was supported by the testimony of others—she was standing still on Wisconsin avenue at the end of the iron apron extending from the sidewalk and observing one or two automobiles passing to the east and a passenger bus just stopping at the southwest crossing of the intersection; that she had looked to the east and noticed no car approaching from that direction. There was testimony that defendant's car was then being driven between twenty and twenty-five miles an hour.

Defendant's version was that she noticed the plaintiff approaching and then stopping at this point on the crossing when she, the defendant, was some four or five car lengths to the east; that her car was not exceeding fifteen miles an hour; that the horn was sounded; and that just as the car was about to pass, the plaintiff stepped suddenly out into its path and was struck by the right front portion of the car. The car stopped at about the center of the intersection.

From a consideration of the conflicting testimony as to how this accident occurred we are satisfied that the issue of fact as to whether plaintiff was negligent at the time was one proper for solution by the jury and trial court, and their conclusion on that subject cannot now be disturbed.

The jury found by their answers to separate questions 2, 3, and 4, three several ways in which defendant was negligent at the time. Question 5, the one now criticised, provided that it was to be answered if either of said numbers 2, 3, or 4 was answered Yes, and further read: "Was the failure of the defendant . . . to exercise ordinary care in such respect the proximate cause of the injuries to the plaintiff? "

The objection to the form of this question is undoubtedly well taken, for such form left it uncertain as to which of the three grounds of found negligence was, in the opinion of the requisite number of jurors, *a* or *the* "proximate cause." It is the better practice to follow the method suggested in the case of *Berrafato v. Exner,* 194 Wis. 149, 216 N. W. 165. The record, however, discloses that no objection was interposed by defendant on the trial to its form, or any request made that a separate question as to proximate cause should be applied as to each one of the elements of negligence so separately found. Nor in the defendant's motions after verdict and for a new trial does any such objection appear, although one of the requests was that the answer to said question 5 be changed from Yes to No.

The objection to the form of said question 5 being raised for the first time here, and when, as here, from the con-

sideration of the record, we cannot say that justice was not done, the result ought not and cannot, for such ground, be now changed.

Plaintiff, when brought to the hospital, had a large wound six by two and one-half inches at the crest of the right hip bone and which leaves a permanent scar. The wound was ground full of dirt and gravel. A portion of that hip bone was dragged off and cannot be restored, and it appears that the spine is slightly tipped, and although there is no resulting limp there is a slight tipping of the body when the plaintiff stands. There were a number of contusions and a scar on the right knee. She was in the hospital sixteen days and lost twenty-six days from school and was unable from then on to keep up the full amount of required work, and appears to have lost weight. There is testimony of pain, nervousness, exhaustion, and loss of appetite.

The physicians called by both plaintiff and defendant, when questioned as to what extent, if any, the injuries would be permanent, were practically agreed that no definite answer could be then made in that regard without at least having the aid of an X-ray picture. None such was offered in evidence or appears to have been made. We must therefore hold that the plaintiff has not met the burden as to the proof required in order to warrant the awarding of damages to any considerable amount on such an element as substantial permanent injury, an element that was, however, referred to the jury by the court's specific instruction.

We cannot avoid the conclusion that in assessing the damages at $3,583 there must have been included by the jury a considerable amount for what they supposed would be permanent injurious results from this accident, and for that reason the defendant's objection to the verdict on the ground of its being excessive must be sustained.

Rather, however, than to require the parties to be at the expense and delay of a new trial, we feel that the ends of justice will be properly served by permitting the plaintiff,

within thirty days of the return of the record to the court below, to there file a consent to a reduction of damages to the sum of $2,500, with costs and disbursements as before, and in default of such being done, then defendant's motion for a new trial must be granted.

*By the Court.*—Judgment modified by permitting a reduction of damages to $2,500, otherwise a new trial, and as so modified is affirmed.

CROWNHART, J. (*dissenting*).  I do not think the verdict is so excessive as to require this court to interfere with the amount of damages awarded.

Dr. Carl D. Neidhold, for the plaintiff, testified as to the condition of the girl immediately after the accident.  He said:

"She had a large lacerated wound over the anterior superior bone of the right ilium.  That is the wing of the hip bone or pelvis.  This wound was about six inches long and about two and a half inches wide.  There was a compound fracture of the anterior superior bone of the ilium and the bone was ground off as though she had been dragged on a hard surface, and the wound was ground full of dirt and gravel, and there were multiple contusions and abrasions on the lateral surface of the right leg."

Dr. E. F. McGrath, a qualified surgeon, examined the girl the day of the trial and testified to her injuries on behalf of the defendant.  He found her suffering from a pain in the lateral and front portion of her right thigh, beginning at a point inside the crest of the ilium and radiating down the back of the thigh.  He found a scar on the front of the ilium or bone that forms the bony framework of the pelvis. The scar was apparently to the bone and it laid toward the groin and did not move.  The bony portions which were normally there were absent.  As the girl lay upon the table for examination, with her legs stretched out, it pulled the right side upward.  The spine was slightly tipped to the

right.   The examination showed a part of the crest of the hip bone or ilium gone.   The scar caused a protracture of the leg.   There is a permanent scar and loss of bone that will not be regenerated.   She stands crooked; her body is not directly upright, and there is some deviation,—about five or ten degrees from the normal.   If there is not a breaking down of the bone, which might cause some trouble, she might outgrow it in a year or two years, but he could not tell that from his examination.   The injury caused this condition.

The testimony of Dr. McGrath seems to be frank and fair.   That the girl has a serious, permanent injury is apparent from his testimony.   A portion of the ilium is gone; the periosteum is destroyed and will not be regenerated; the scar tissue is adherent to the bone, with the result that the leg is protracted—pulled forward.   That stretches the pelvis forward.   The spine is affected,—a deviation from normal of five to ten degrees.   It needs no further expert testimony to show us that here is a serious and permanent injury.   The suffering must have been very considerable.   The bone and flesh were ground off by being dragged on the gravel and dirt.   The wound was six inches by three inches, and filled with grime.   She had a serious nervous affliction up to the time of trial, some six months after the accident.   These nervous complaints are sometimes exaggerated, but here we have her nervous condition confirmed by the condition of the spine being bent out of normal.

In such a case the damages should not be measured with an apothecary's scale.   The jury were the best judges of the fact.   They saw the girl, heard the witnesses, and their verdict bears evidence of being fair.   I therefore respectfully dissent from the reduction of the damages.