IRENE AND EDWARD H. USEMAN v. MINNEAPOLIS STREET RAILWAY COMPANY AND ANOTHER.[1]

September 11, 1936.

No. 30,791.

[1]Reported in 268 N. W. 866.

*Ralph T. Boardman* and *John F. Dulebohn,* for appellant Minneapolis Street Railway Company.

*Ossanna, Hall & Hoaglund* and *Charles E. Carlson,* for appellant Albert Johnson Coal Company.

*Meshbesher & Anderson, Robert J. McDonald,* and *William H. DeParcq,* for respondents.

DEVANEY, CHIEF JUSTICE.

Action by husband and wife to recover damages sustained by each due to personal injuries suffered by the wife in a collision. The defendants are the Minneapolis Street Railway Company and the Albert Johnson Coal Company. Hereinafter they will be referred to as the streetcar company and the coal company.

On November 15, 1933, Mrs. Useman was riding as a passenger on a streetcar traveling north along Chicago avenue in Minneapolis. At the intersection of Chicago avenue and East Twenty-fourth street the streetcar collided with one of the defendant coal company's trucks which was proceeding in a southerly direction along Chicago avenue. Mrs. Useman, who was seated in the streetcar, was thrown forward against the seat directly in front of her, thereby sustaining the injuries complained of. She was taken to a hospital in an ambulance where she remained until December 8, 1933, when she was permitted to return to her home.

The actions came on for trial on March 27, 1935. The jury returned a verdict for Mrs. Useman against both defendants in the sum of $18,000, and a verdict for her husband in the sum of $2,000. Each defendant moved for a new trial, and both motions were denied. The appeals are from the orders denying defendants new trials.

Three questions are presented:

(1)   Was there sufficient evidence of negligence on the part of each of the defendants to sustain the verdicts?

(2)   Were the court's instructions proper?

(3)   Are the verdicts excessive?

■   The accident occurred at about 2:30 o'clock in the afternoon on a bright, clear day. There had been some snow, and the streets were slippery. There were no obstructions or distracting circumstances at or near the intersection. The automatic signal at the center of the intersection indicated "go" for traffic on Chicago avenue when the truck and streetcar approached the intersection, traveling in opposite directions. The truck driver turned left at the intersection intending to proceed easterly along Twenty-fourth street. At the time of the impact the truck was almost entirely across the tracks, with the exception of the right rear wheel, which had not quite passed the easterly rail. The front end of the streetcar collided with the right rear of the truck. The force of the impact turned the truck around, and it came to rest against a trolley pole on the east side of Chicago avenue 23.7 feet north of the northerly curb line of Twenty-fourth street.

There is ample testimony to sustain the finding of negligence on the part of the motorman of the streetcar. The record shows that the streetcar increased its speed to 15 or 20 miles per hour when it was 25 to 50 feet south of the intersection. The driver of the truck had extended his arm indicating a left turn. By his own admission, the motorman failed to observe the extended arm. The testimony of a disinterested witness was to the effect that the motorman was not looking ahead, but was standing looking to the east. There is evidence that the motorman did not apply his brakes

or reduce his speed before the crash. It is apparent that the negligence of the defendant streetcar company was at least a question for the jury, and this court would not be justified in disturbing the verdicts on that ground.

Nor is there any justification for disturbing the verdicts on the ground that the truck driver's negligence was not sufficiently established. The driver of the truck approached the intersection knowing of the oncoming streetcar. He had ample opportunity to observe its speed. He knew that in making a left-hand turn he would have to cross the streetcar tracks on a slippery street. The testimony indicates that, despite all these facts, the truck driver turned suddenly. We have not overlooked the fact that he was preparing to turn before he arrived at the point where he did so and that he had swung out to the center of the street with that in mind. But the fact remains that he made the turn suddenly and sharply, and the record shows that he made the turn before he arrived in the intersection, that is, to the north of it. These facts, in the light of the truck driver's own statements that he made no attempt to stop although he could have done so in the space of six or eight feet, and that after first observing the streetcar when he was 50 feet from the intersection he did not notice it again until just before the collision, are sufficient to sustain the finding of negligence on the part of the defendant coal company.

■ There were no formal requests for instructions submitted to the court by counsel for either of the defendants. There was, however, handed to the court by counsel for one of the defendants a copy of a charge delivered by another judge in an earlier case arising out of the same collision as the one involved herein. The court adopted substantially the phraseology of that charge on the question of negligence. No exception was taken to the court's charge at its conclusion, but error was assigned by both defendants in their motions for new trials and is urged here as grounds for reversal, pursuant to 2 Mason Minn. St. 1927, § 9327, which provides that the aggrieved party may be granted relief in case of error in the court's instructions, even though no exception is taken, if the error is clearly specified in the notice of motion for a new trial. This

statute, however, is subject to an important limitation, namely, that counsel cannot take advantage of unintentional misstatements, verbal errors, or technical inaccuracies in matters of law on the part of the trial judge in his instructions to the jury where they are due to inadvertence and were not called to his attention in time so that they could be corrected. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; Fredhom v. Smith, 193 Minn. 569, 259 N. W. 80.

The defendant coal company claims prejudicial error in the following portion of the court's charge:

"Even, however, one may have the right of way, he may not exercise that right of way if he sees that there is reasonable danger of a collision if he proceeds. If the streetcar was coming at such a rate of speed that it could not stop, then Hanson could not be permitted to go into the intersection in order to make the left-hand turn without being himself negligent if it should be reasonably certain that he did not have time, because of the speed of the streetcar, to complete the turn before the streetcar arrived at that point."

The contention is that this instruction imposes upon the truck driver, Hanson, the duty of knowing the speed of the streetcar and ascertaining whether it was going at such a rate of speed that it could not stop. We do not believe that the objection to the instruction is well taken. The first sentence is to the effect that one may not exercise the right of way "if he sees that there is reasonable danger of a collision if he proceeds." Considering this statement together with and in light of the paragraph as a whole, and with particular reference to the further statement that Hanson could not be permitted to go into the intersection to make the turn "if it should be reasonably certain that he did not have time, because of the speed of the streetcar," to complete it, we are unable to conclude that the trial court committed any fundamental error. It is clear that the court intended these instructions to convey only the idea that the question of Hanson's negligence in making the left-hand turn when and if the streetcar was approaching at such a rate of speed that it could not stop depended on whether or not Hanson saw a reasonable danger of collision if he proceeded, and

whether or not he knew that he would not have sufficient time, because of the speed of the streetcar, to complete the turn before the streetcar arrived at the point where he wished to turn. While it must be conceded that the language of this portion of the court's instruction was not happily chosen, yet, taken as a whole, it is quite unlikely that it conveyed to the jury the idea for which the defendant contends. It almost certainly did not convey that impression to counsel at the time it was given. If it had it would have been his duty to call it to the attention of the court, in which case all possibility of ambiguity would have been promptly removed by the court by further instructions. Actually, it appears that counsel did not discover any possibility of ambiguity until after careful study of the printed record. It is not likely that the jury was misled by this instruction. If after the words "reasonably certain" there had been added simply the words "to him," there could have been no question of possible ambiguity. At best, this omission was an inadvertence on the part of the trial judge which, considering the instruction as a whole, cannot be said to be error of such nature as to·entitle defendant to a new trial. We are unable to say that it likely caused a miscarriage of justice in this case, and cannot disturb the verdicts on that ground.

On behalf of the streetcar company it is urged that the court erred in its charge in two particulars. The first is that the court erred in instructing the jury as to 1 Mason Minn. St. 1927, § 2720-17, which provides:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian or cyclist may be affected by such movement shall give a clearly audible signal by sounding the warning device, and whenever the operation of any other vehicle may be affected by such movement shall give a signal either by extending the arm horizontally from and beyond the left side of the vehicle or by an adequate mechanical or electrical signal device, plainly visible to the driver of such other vehicle, of the intention to make such movement at least fifty feet before a stop

or turn is to be made, except that the requirement of signal by warning device shall apply to motor vehicles only."

After reading this statute to the jury, the court stated:

"And you will note that those warning signals only have to do with pedestrians and persons on bicycles and other automobiles."

It is the contention of the streetcar company that, because the court had previously eliminated from the case the question of audible signals by horn, whistle, or gong as to either defendant, this quoted statement would leave the impression with the jury that the driver of the truck was not required to give an arm signal, as it was a streetcar and not a pedestrian, person on a bicycle, or an automobile that was approaching. What has been said herein with reference to the instruction claimed by the coal company to be error applies with equal force to this assertion. Through inadvertence on the part of the court or by reason of a typographical error, the word "and" is found in the charge before the words "other automobiles" instead of the word "not." Be that as it may, from a reading of the whole charge, it is reasonably clear that the court was referring only to audible warning signals and was not relieving the truck driver of his duty to signal with his arm for the benefit of the streetcar when making the left-hand turn. There is no reasonable ground for believing that the instruction conveyed any other idea to the jury. However, even assuming that it had the effect contended by defendant, we are unable to perceive in what manner the instruction was prejudicial to the defendant company. Counsel merely asserts it as error "which may have caused the jury to hold the street railway company negligent." There is no hint or suggestion as to *how* it could possibly have done so. Furthermore, the fact is that the truck driver's arm was extended, and one of the acts of negligence on the part of the motorman relied upon by plaintiffs was his looking to the east instead of keeping a lookout ahead. We conclude that the error, if any, was harmless and cannot be taken advantage of by the defendant streetcar company.

The foregoing also applies to the claim of the streetcar company that the court erred in stating to the jury:

"On the other hand, if you should find that the collision took place where the defendant street railway company claims it did, and in the manner that the defendant street railway company claims, if you find that Hanson did make a turn at the place at that point, or substantially there, beyond the intersection and north of Twenty-fourth street, then the defendant Albert Johnson Coal Company was negligent, as Johnson had no right to make a turn at that point under the circumstances that existed at that time."

The contention is that this language limited the negligence of the truck driver to the place of turning, whereas the jury could have found him negligent no matter where he turned. Assuming that to be so, we are unable to see what bearing the instruction would have on the question of the negligence of the streetcar company. The jury found both defendants negligent. The question of the streetcar company's negligence, considering the facts that were shown in support of the allegation of negligence on its part by the plaintiffs, could in no way be affected to the company's prejudice by this instruction of the court. Counsel has failed to advance a single possible theory to indicate how the jury could have been misled to the prejudice of the streetcar company.

The language of the charge on the issue of negligence was unfortunately phrased; it contains patent inadvertence. Yet, taken as a whole, it fairly presented the issues, resulted in no prejudice to either of the defendants, and therefore this court will not disturb the verdict on that ground.

The only question that remains is whether the verdicts are excessive.

The verdict of $18,000 for the wife is large, but considering all the evidence relating to her injuries we cannot say that it is so excessive as to indicate that it was arrived at because of passion and prejudice.

Plaintiff at the time of the accident was a woman of 50 years of age with a life expectancy of approximately 20 years. She worked

in a bakery, earning something over $900 per year. Prior to the time of the accident she enjoyed good health. The evidence shows that due to a physical shock at the time of the collision she suffered a sprained sacroiliac joint and a sprain of her lumbar muscles. She suffered great pain while in the hospital and thereafter up until the time of the trial. There is ample testimony showing that she suffered from traumatic neurosis and as a part of that condition was afflicted with hysterical or functional paralysis. The evidence shows a complete loss of all types of sensation in her right foot and leg extending to the navel. She had no control over her leg and could walk only with the aid of crutches, dragging her right leg. She was disabled by this condition from pursuing her occupation and from performing anything but light tasks about her home.

At the time of the trial, 16 months after the accident, she still suffered considerable pain. Her attending physician testified that she still had trouble with her lumbar muscles and sacroiliac joint. She was still receiving treatment and was required to wear a sacroiliac belt. There is no reasonable ground for suspecting plaintiff of malingering.

The evidence indicates that plaintiff will require medical care in the future and she will continue to be in some pain. There is testimony tending to show that the condition of hysterical paralysis may improve and it may not. As long as it continues, medical attention will be required. The case, aside from other enumerated injuries, is typically one of traumatic neurosis.

Although each case involving the question of excessive damages must be considered with reference to its own peculiar facts regarding injuries, we have examined carefully the cases cited by counsel for appellants and respondents. The following have sustained the largest verdicts in cases of traumatic neurosis: Galloway v. C. M. & St. P. Ry. Co. 56 Minn. 346, 57 N. W. 1058, 23 L. R. A. 442, 45 A. S. R. 468 ($10,000); Kitman v. C. B. & Q. R. Co. 113 Minn. 350, 129 N. W. 844 ($11,000); Smith v. G. N. Ry. Co. 133 Minn. 192, 158 N. W. 46; Id. 137 Minn. 473, 163 N. W. 1070 ($12,000). It will be noted that the largest is for $12,000. Considering all the

testimony and circumstances in this case, not overlooking the sacroiliac and lumbosacral condition, we conclude that the verdict in favor of Mrs. Useman is excessive to the extent of $5,000 and should be reduced by that amount. Compare Birdsall v. Duluth-Superior Transit Co. 197 Minn. 411, 267 N. W. 363.

We can find no ground for disturbing the verdict for the husband. Prior to the time of the accident Mrs. Useman did all the housework in their home. His actual expenditure up to the time of the trial for a hired girl, for medical care and treatment, and for hospital expenses was $701.69. These expenses will continue for an indefinite time in the future. He is entitled to recover for the loss of his wife's services, society, and companionship. We cannot say that the sum of $2,000 is excessive.

It is therefore ordered that a new trial on question of damages be granted unless respondents shall within 30 days file a written stipulation in the court below consenting to a reduction of the wife's verdict to $13,000.

