COCA COLA BOTTLING Co. et al. v. BLACK.

*99 P. 2d 891.*

No. 29376.  Feb. 27, 1940.

Crouch, Rhodes & Crowe, of Tulsa, for plaintiffs in error.

B. A. Hamilton and S. J. Clendinning, of Tulsa, for defendant in error.

DAVISON, J. This is an appeal from a judgment in an action instituted by the defendant in error against the plaintiff in error to recover damages for personal injuries she received in an automobile accident.

The parties will hereinafter be referred to as they appeared in the trial court.

The plaintiff's alleged injuries resulted from her automobile's collision with a bridge, which it struck after she had driven it partly off the road to avoid a collision with one of the defendant's trucks.

The verdict and judgment were for plaintiff in the sum of $5,000.

The only proposition urged by the defendant in this appeal is that the amount of "the verdict and judgment is highly excessive, not sustained by sufficient evidence and appears to have been given under the influence of passion and prejudice."

The only physical injuries that the plaintiff claimed to have suffered were slight cuts and bruises and a sprain to her back. She testified at the trial that she had fully recovered from the cuts and bruises. At one point in her testimony she stated that she had not entirely recovered from the back sprain and was "bothered a lot" with it. Besides this testimony of the plaintiff herself, there was no other evidence introduced as to the nature and extent of these injuries. There was no proof that the plaintiff had taken any specific treatment for the "sprain." In answer to counsel's question as to what had been done for her back, the plaintiff answered that the doctor "just gave me medicine for shock—more to settle my nerves, than anything." It appears that this medical attention was given by one Dr. Johnson soon after the accident, and as far as the record shows, the plaintiff had no medical attention from this time until approximately a year later, when she went to see a specialist in nerve and mental diseases, by the name of Dr. Smith, about two months before filing this action. When asked on cross-examination if she had physically recovered from her injuries, the plaintiff answered, "Yes, sir." She then gave an affirmative answer to the following question:

"And about all that is the matter with you now is this nervous condition that you told us about?"

Plaintiff's description of the "nervous

condition" alluded to is contained in the following excerpts from her direct examination:

"Q. Now, since the time of this accident, just tell the jury what you have done, and what you have been able to do? A. Well, it requires—I have to have help to do the housework and it seems like, from the daily housework—the little bit I do—that it requires so many hours, and I have to lie down—I cannot stand up. There is a nervous condition that seems to prevail so that I just cannot—* * * A. Well, as I said before—it is a condition hard to describe. It just feels like that there is—well, like as if there was something coming this way (indicating) and something this way (indicating) and nobody getting anywhere and no place to stop and it is just a condition that shoots up and down in my system all the time, and when it gets so bad—that is when I was doing my housework—I have to just lie down and control myself and keep out of crowds."

A further description of the plaintiff's condition is contained in the following excerpts from the direct examination of Dr. Smith, who testified in her behalf:

"Q. What did you find, upon that examination, Doctor? A. Well, she stated her complaint to be extreme nervousness, instability, weakness, insomnia, and her sleep, such as she could get, was a troubled sleep. She kept living that accident—her experience—over and over again and she had an extra phobia of automobiles and under no circumstances could she bring herself to getting behind the wheel of an automobile. * * * A. Well, the mean and maximum in this particular case is but another illustration of a general principle where people develop neurosis, which simply means the malfunctioning or inefficient functioning of the nervous system, and, as a general proposition, it comes about wholly on an emotional basis. We think of disease itself in terms of physical disorder, but we forget that what happens to our mental machinery might have a great deal to do with our physical and nervous efficiency and our mental stability."

We think the evidence in the present case is sufficient to support the conclusion that the plaintiff's condition, whatever its nature and extent, is due to some sort of a shock to her nervous system, and counsel for the defendant do not contend that it was not the result of the accident, but they do urge that a recovery of $5,000 for it and the plaintiff's superficial cuts and bruises is obviously out of proportion to the recoveries allowed for similar injuries in other cases. Cases cited to demonstrate this contention are Potashnick v. Wells (Mo. App.) 273 S. W. 777; Tuck v. Harmon (La. App.) 151 So. 803; Lowe v. Armour Packing Co. (Minn.) 182 N. W. 610; Block v. Seibold (Wis.) 217 N. W. 694; Allen v. Friedman (Miss.) 125 So. 539; Chaisson v. Williams (Me.) 156 A. 154; Louisville & N. R. Co. v. Roberts (Ky.) 271 S. W. 1036; Swartz v. Drake Realty Construction Co. (Neb.) 192 N. W. 221. In none of these cases were judgments as large as the one in this case allowed to stand. In most of them, it is readily apparent that the injuries involved were as serious, or more so, than the injuries involved herein.

Counsel for the plaintiff insist that the verdict and judgment in the present case is not excessive and call our attention to the following quotation from 17 C. J. 1114, paragraph 450:

"Where damages are sought for injury to the nervous system, the utmost circumspection must be exercised to avoid injustice from the denial of substantial damages for real injury, and, on the other hand, from their award in cases of honest mistake or fraud."

Our attention is also called to the cases cited in the footnote under the above quotation, wherein judgments in amounts up to and including the sum of $20,000 were held not to be excessive for injuries to the nervous system. We find from an examination of the cases cited that in all of them, wherein judgments of $5,000 or more were upheld, the plaintiffs received either permanent injuries to their nervous systems or permanent injuries of another character in addition to injuries to their nervous systems. Nothing of that sort is established by the evidence in the present case. The only direct evidence of the permanency of the plaintiff's condition in the present case is found in the testimony of Dr. Smith.

The following excerpts from the record set forth the substance of his testimony on this subject:

"Q. Now Doctor, comparing this mental and nervous condition with just the ordinary physical condition, is it worse or is it less severe upon a person? Will you make some comparison, so we will understand it? * * * A. The average person will eventually stabilize against these experiences, sometime. * * * Q. Considering the examination you have made and what you personally know of her condition, and the lapse of time since then, what is your opinion as to the permanency of this condition? In other words, what is the prognosis? A. The prognosis is that the treatment for relief must be very guarded in this situation. It has the capabilities of being permanent. Q. What is your opinion as to the probability of permanency from this condition, considering the length of time that has lapsed? A. It is bad. * * * Q. I am trying to find out your opinion as to the probability of permanency? A. While I regard her outlook as bad for relief clinically, we must never close the door for relief for a patient. Q. What is your opinion about it? A. The length of time this has gone on and general nature of her condition, as evidenced by my study of it at the time, indicates to me that she has a poor outlook for stabilization or recovery."

In our opinion, the evidence we have hereinbefore described and quoted is insufficient to justify a verdict in the amount that was rendered for actual damages in the present case. While we recognize that "in determining whether a verdict is excessive, each case must be ruled chiefly on its own facts and circumstances" (Sand Springs Railway Co. v. McGrew, 92 Okla. 262, 219 P. 111), and that there is no absolute standard by which to determine what is fair and just compensation for personal injuries, yet some weight should be given to judicial precedent concerning what comprises a reasonable allowance for certain types of injuries. In Lowe v. Armour Packing Co., supra, in which a verdict for the sum of $2,500 was affirmed on condition that it be reduced to $1,500, the court said:

"Plaintiff was evidently t h r o w n against the back of the front seat and then fell or slid into the bottom of the automobile between the seats. * * * She was taken to a hospital where a dry bandage was placed around her head over a lump or swelling which had formed on her forehead, and she was then taken home. The next day she called another physician who found that a contusion on her forehead had produced a lump between her eyes and had caused the upper part of her face to turn black and blue; also that two teeth had been loosened (which were removed some months later); and also that she had sustained a bruise on her right knee which caused a black and blue spot about the size of a hand and another bruise on her left hip which caused a black and blue spot about twice that size. She complained of pain and soreness in the region at the lower end of the sternum and pit of the stomach and in the lower part of her back, also of nervousness and inability to sleep. * * *

"She testified that she did not become able to do her housework until some six months after the accident; that she has had dizzy spells ever since the accident, which she attributes to the injury at the pit of her stomach; that her back still troubles her when at work although she suffers no pain when quiet; and that she has a prickling sensation in her knee whenever she kneels upon it. These include the principal subjective symptoms to which she testifies. Her expert states that these subjective symptoms would indicate nervous disturbances which may have resulted from the nervous shock occasioned by the accident, and that he would also assume from them that there had been a strain in the knee joint and in the back. He further states that he examined various nerves and nerve trunks, but found nothing wrong with them nor any loss of sensation, and did not consider the condition described by her permanent, but was unable to give any estimate as to how long it might continue.

"The objective symptoms disclosed only superficial injuries from which plaintiff seems to have made a fairly complete recovery save for the loss of the two teeth. The nature, extent and probable duration of the injuries and nervous disturbances inferable from the

subjective symptoms are too uncertain and conjectural to form the basis for any large verdict. To entitle a plaintiff to damages for the apprehended continuance in the future of the consequences of an injury, the burden is on him to show with reasonable certainty that such consequences now exist and will continue in the future, and the nature and probable duration thereof.

" 'Future consequences which may or are likely to result from the injuries are too speculative to be considered.' Olson v. C., M. & S. P. Ry. Co., 94 Minn. 241, 102 N. W. 449; L'Herault v. City of Minneapolis, 69 Minn. 261, 72 N. W. 73; McBride v. St. Paul City Ry. Co., 72 Minn. 291, 75 N. W. 231.

"One of the difficult questions presented in personal injury cases is the effect to be given to subjective symptoms, the existence of which is established only by the testimony of the person concerned. This question was considered at some length in Johnson v. Great Northern Ry. Co., 107 Minn. 285, 119 N. W. 1061; Kitman v. C., B. & Q. Ry. Co., 113 Minn. 350, 129 N. W. 844, and Haugen v. Northern Pacific Ry. Co., 132 Minn. 54, 155 N. W. 1058. In the Haugen Case the plaintiff testified that her head was injured and her memory affected; that she had frequent headaches; that her back and side pained her; and that she could not walk straight. The court said:

" 'The jurors were asked to diagnose plaintiff's physical condition, to make a prognosis of her future and to determine the cause of her ailments. We are of the opinion that they could not reasonably do so. They could only speculate as to these important matters.'

"The court further observes:

" 'Courts must exercise much circumspection in sustaining large verdicts in cases where no injury can be seen, and where the word of the person injured is the only evidence of its extent.' * * *

"In the present case plaintiff sustained injuries for which she is entitled to recover, but the cause, seriousness, and probable duration of the continuing consequences of such injuries is not shown with that degree of certainty necessary to justify the allowance of a large sum therefor in the verdict."

We do not endorse the entire judicial expression above quoted as applicable to the present case. It does, however, reflect certain considerations which may naturally occur to any tribunal that has the task of deciding a case like the present one. We fully realize the difficulties to be encountered in attempting to establish with any degree of certainty the direct cause as well as the nature and extent of a "condition" like the one with which the plaintiff is said to be plagued. Whether the same is due entirely to psychological or neurological causes, or a combination of both, we think that the evidence in the present case is of such a character as to be wholly insufficient in establishing any direct and permanent injury to the plaintiff's nervous system as was proven in the cases her counsel has referred to wherein verdicts of $5,000 or more were upheld. In our opinion, the plaintiff's injuries, as well as the evidence concerning the same, are more nearly like those in the cases cited on behalf of the defendant. As the verdict in the present case is of a sum which is generally considered ample compensation for injuries of a much more painful, serious, and permanent character than those involved herein, we believe that we are justified in inferring that it was the result of passion or prejudice, rather than a deliberate and dispassionate consideration of the evidence by the jury.

It is our opinion that the sum of $2,500 will reasonably compensate the plaintiff for her injuries. It is therefore the order of this court that if the plaintiff, defendant in error here, within 15 days after mandate is filed in the trial court, will file a remittitur of all of the judgment heretofore entered herein in excess of said sum, said judgment will be affirmed. If said remittitur is not filed, as directed, the within cause will stand reversed and remanded for a new trial.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, and DANNER, JJ., concur. OSBORN, J., absent.