**BROUILLARD et al. v. S. S. KRESGE CO.**

**No. 49.**

District Court, W. D. Wisconsin.

Nov. 1, 1941.

Crawford & Crawford, of Superior, Wis., for plaintiffs.

Holmes, Mayall, Reavill & Neimeyer, of Duluth, Minn., and Powell & Sprowls, of Superior, Wis., for defendant.

STONE, District Judge.

The above-entitled action was tried to the Court and a jury. The jury returned a verdict in favor of the plaintiffs, fixing the plaintiff Arthur Brouillard's damages at $1,000, and the damages to the plaintiff Marguerite Brouillard at $6,500. It found that the negligence of the plaintiff, Marguerite Brouillard, that contributed to produce her injuries, was 13⅓ per cent. of the total negligence involved, and the negligence of the defendant contributing to her injuries was 86⅔ per cent. of such total.

The usual motions after verdict were made, the plaintiffs moving for judgment on the verdict, and the defendant moving for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

There was a conflict in the testimony with reference to the negligence of the defendant. The jury found the defendant

negligent, and that such negligence contributed to the plaintiff's injuries. There was credible evidence supporting that finding, and the finding of the damages sustained by the plaintiff, Arthur Brouillard.

The troublesome question before the court relates to the jury's appraisal of damages alleged to have been suffered by the plaintiff, Marguerite Brouillard. The defendant contends that the sum awarded to her by the jury is excessive, and bases its contention on the claim that she suffered no permanent injury, and that the evidence does not support the jury's finding of damages sustained by her.

■ I have carefully reviewed the testimony of the plaintiff and the medical testimony of both parties. The evidence tending to establish to a reasonable certainty that plaintiff, Marguerite Brouillard, sustained injury of a permanent nature is somewhat meager. It seems to conflict with reasonable probabilities. Much of plaintiffs' medical testimony is based on subjective symptoms, which lessens the probative force of such testimony. Salo v. Dorau, 191 Wis. 618, 211 N.W. 762; Johnson v. Great Northern Ry. Co., 107 Minn. 285, 119 N.W. 1061.

Plaintiff, Marguerite Brouillard, testified that she was thirty-eight years of age, weighed 284 pounds, and sustained injuries in question on March 1, 1941, when she fell down the stairs at the defendant's store at Superior, Wisconsin. That after the fall she was conscious, and Dr. Mc-Gill, who examined her at the place of the accident, advised her that she had received a few bumps but no serious injuries. She walked up the stairs, with assistance, and was removed in an automobile to her home. On arrival at her home, she collapsed and was unconscious until about nine o'clock that evening when Dr. Christiansen was called. That she remained in bed about two weeks, and during most of that time was in a stupor. That as a result of the fall she sustained injuries to her head, neck, left shoulder, arm, hip and knee. That the injured parts of her body were swollen and discolored. That she still suffers intermittent pain in the back, continuous headache, intermittent dizzy spells, and a sinking feeling, numbness in the left hand and forearm, lameness in left leg, partial loss of vision and hearing, nervousness and inability to rest and sleep. That after she had been in bed about twelve days, X-rays of her injuries were

taken. That she remained in bed about four weeks thereafter. That she is unable to do her housework and it is necessary to apply hot applications to lessen the pain in her back. That the swelling and discoloration of the injured parts have subsided, but there has been no other improvement in her physical condition. That in 1925 she had two mastoid operations on her left ear. That three days after she was injured, she noticed a liquid discharge from her ear, and that the drainage from the ear has continued to the date of the trial.

Dr. C. H. Christiansen was called by the plaintiffs and testified that he saw the plaintiff Marguerite Brouillard at her home about nine o'clock in the evening on the day she was injured. That she was unconscious, in complete shock, the pupils of her eyes dilated, pulse slow and weak, hands cold and clammy, and that she did not respond to any external stimuli. That she was irrational for twelve days. That there was swelling and discoloration in her left shoulder and knee. That she complained of pain in the small of her back, in both hips, especially the left one, of headache and dizziness. That she had sustained a bump on the back part of the head. There was considerable soreness in the body. She suffered no fractures. That it was difficult for her to walk. That she was in bed twelve days before X-rays were taken. That the X-rays were negative. That she was nervous, and her blood pressure had increased up to 130–140.

That she had an old scar from a mastoid operation on the left side of the skull. That there was some drainage from the left ear for three or four months. She complained that she did not hear as well in the left ear as she had previous to the fall.

That after the X-rays were taken, she was confined to her bed at home for about three or four weeks because of her nervousness, the head symptoms, and injuries to her back and hip. That she informed him that she still has headaches, dizzy and sinking spells, considerable pain in her left shoulder and left elbow, and numbness in her left hand and left forearm which sometimes extends to her shoulder.

That it was his opinion that she suffered a permanent injury to her brain, but that the brain injury and other injuries

incident thereto and resulting therefrom may improve slightly.

He also testified that she may have had quite a severe shock to her spinal cord, and that she has now developed a traumatic arthritis in left hip, shoulder and knee which will not improve, but may become worse; and that it was his belief that she will not be able to do her housework.

On cross-examination, the doctor testified that the X-rays were negative; that the injuries were all to soft tissue. That the plaintiff was irrational and was in severe shock when he first saw her. He testified that the symptoms and manifestations that she suffered a brain injury have now disappeared, except impairment of vision and hearing. That the swelling has subsided and that his findings of her present condition are based largely on subjective symptoms, but that there is a grating in her shoulder and knee joint and lack of motion in her left hip, and that she is very nervous.

Dr. Victor E. Ekblad testified that he examined the plaintiff on July 14, 1941; that the only objective findings were defective vision and defective hearing. That she had some crepitus in the left shoulder joint. That she had a high blood pressure reading and a rapid pulse. That the crepitus is a permanent condition but will not cause any disability. It may cause a mere temporary disability. That he did not believe she sustained any injury to the brain. The impairment of the vision was the same in both eyes. That she had two mastoid operations in 1925 which would cause an impairment of the hearing. That the only permanent injury she was suffering from at the time of his examination was the crepitus in the left shoulder, and her hypertension, and that he thought she had a chronic arthritic condition in the left shoulder.

Dr. N. H. Gillespie, an eye, ear, nose and throat specialist, testified that he had examined the plaintiff for the defendant. That her vision was about twenty-fortieths —about twenty per cent reduced in both eyes. That her vision was twenty-twentieths with the aid of lenses, which is normal in both eyes. That he found no evidence of any brain injury. That there was about 10 per cent. reduction of hearing in the right ear and 20 per cent. reduction of hearing in the left ear. That the right ear drum is shrunken and indicates a long-standing catarrhal inflammatory process. That there have been two operations on her left ear. There is a small discharge or drainage from that ear at this time. That there is very little ear drum left in the left ear. There is no injury to the eyes. The eyes are normal.

Dr. Thomas J. Doyle, eye, ear, nose and throat specialist, testified that he attended and examined plaintiff, Marguerite Brouillard, on August 5, 7, and 14, 1941. He testified, in answer to an hypothetical question, that there was an indication that there had been some brain injury. He did not, however, testify that he had discovered any brain injury from his examination of the plaintiff, and was not called as a witness by the plaintiff except on rebuttal. He testified that her vision in both eyes was twenty-fortieths, and was corrected with glasses to normal, and that proper fitting of the glasses might give her some relief from her headaches.

The assessment of damages in personal injury actions is particularly difficult. There is no accurate scale and no rule by which they may be measured or determined. It is the province of the jury to assess such damages. Their assessment will not be disturbed unless they exceed the bounds of common sense. The court is not at liberty to set aside a verdict on the ground that it is excessive unless it is so excessive as to create a belief that the jury was misled by passion, prejudice or ignorance.

The allowance to the plaintiff, Marguerite Brouillard, is very liberal, but the verdict, while somewhat high, is not so excessive as to compel the conclusion that the jury was improperly actuated or influenced by passion or prejudice, and the court does not feel inclined to substitute its judgment for that of a jury.

Defendant's motions are denied, and plaintiffs' motion for judgment on the verdict is granted.

Let judgment be entered accordingly.